## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 15 2017, 7:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide and Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

K.M. and D.M., (Minor Children)

Children in Need of Services and

L.H. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 15, 2017

Court of Appeals Case No.
79A02-1609-JC-2260

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

The Honorable Tricia L. Thompson, Magistrate

Trial Court Cause No.
79D03-1605-JC-120
79D03-1605-JC-122

**Bailey, Judge.**

# Case Summary

L.H. ("Mother") appeals the trial court's order, which adjudicated D.M. and K.M. ("Children") as Children in Need of Services ("CHINS").

We affirm.

# Issue

Mother raises a single issue for our review, whether there was sufficient evidence to sustain the trial court's finding that Children were CHINS.

# Facts and Procedural History

K.M was born to Mother and her ex-husband ("Father") in 2004.[1] D.M. was born in 2007.

Mother had voluntarily sought drug treatment services in December 2015. On May 3, 2016, Mother kept D.M. home from school. At some point, Children's maternal grandmother ("Grandmother") arrived at the home, which Childrens' maternal grandparents had leased to Mother. Grandmother did not believe Mother's claim that D.M. was sick, but rather believed that Mother had

---

[1] During the proceedings, Father was incarcerated in the Department of Correction with an earliest possible release date in 2019. Father does not appeal the CHINS adjudication, but remains a party of record.

experienced a drug use relapse and that the relapse was the reason Mother kept D.M. at home. The argument between Mother and Grandmother escalated into a conflict about money and Mother's rent payments.

[6] A physical altercation ensued, because of which both Mother and Grandmother were injured. D.M. was home at the time, but was in a separate room and was unaware of the fight until police arrived. Police responded to the fight, but left without making an arrest. However, on the same day, the Tippecanoe County Department of Child Services ("DCS") received a report that Mother was not properly supervising Children, that Mother was abusing prescription medication, and that conditions in the home were improper.

[7] On May 6, 2016, Grandmother filed an action to evict Mother from the home for non-payment of rent. An order of eviction was entered on May 16, 2016, and Mother was ordered to leave the premises by May 31, 2016 at noon.

[8] On May 7, 2016, DCS Caseworker Joseph Tonsing-Carter ("Tonsing-Carter") made contact with Mother. Tonsing-Carter visited the home and concluded that the supervision issue was a minor one, and that the home met minimum standards. Mother denied having used drugs since her December 2015 treatment, but agreed to a drug screen.

[9] On May 18, 2016, DCS obtained test results showing that Mother had tested positive for amphetamine and methamphetamine. DCS removed Children from Mother's care, and placed Children with their maternal grandparents ("Grandparents"). Children were also tested for exposure to drugs, and test

results would ultimately indicate that D.M. had been exposed to methamphetamine.

[10] On May 20, 2016, DCS filed a verified petition alleging Children to be CHINS.

[11] On July 14, 2016, an evidentiary hearing was conducted on the allegations in the CHINS petition. On July 29, 2016, the trial court found Children to be CHINS.

[12] On August 11, 2016, a disposition hearing was conducted. On August 22, 2016, the trial court entered its disposition order, under which Mother was ordered to participate in DCS-recommended services to continue to maintain employment and a residence suitable for children. Children's placement remained with Grandparents.

[13] This appeal ensued.

# Discussion and Decision

[14] Mother contends on appeal that there was insufficient evidence to support the trial court's adjudication of Children as CHINS. The Indiana Supreme Court has set forth the standard of review in such cases:

> In reviewing a trial court's determination that a child is in need of services, "[w]e neither reweigh the evidence nor judge the credibility of the witnesses." *In re K.D.,* 962 N.E.2d 1249, 1253 (Ind. 2012) (citing *Egly v. Blackford Cty. Dept. of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992)). Instead, "[w]e consider only the

evidence that supports the trial court's decision and reasonable inferences drawn therefrom." *Id.*

Here, the trial court entered abbreviated findings and conclusions sua sponte. (Unlike CHINS dispositional decrees, *see* Ind.Code § 31-34-19-10 (2008), no statute expressly requires formal findings in a CHINS fact-finding order; nor did either party request them under Indiana Trial Rule 52(A).) As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment. *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997). But we review the remaining issues under the general judgment standard, under which a judgment "will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.* (internal quotation marks omitted).

*In re S.D.*, 2 N.E.3d 1283, 1286-87 (Ind. 2014).

[15] The trial court adjudicated Children as CHINS under Indiana Code section 31-34-1-1, which provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[16] In seeking a CHINS adjudication, the State must satisfy each of the statutory elements by a preponderance of the evidence. *In re D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 580 (Ind. 2017). "Not every endangered child is a child in need of services, permitting the State's *parens patriae* intrusion into the ordinarily private sphere of the family." *In re S.D.*, 2 N.E.2d at 1287. The purpose of a CHINS proceeding is to protect children, not punish parents. *In re D.J.*, 68 N.E.3d at 580. Thus, the third element of the CHINS statute—that care, treatment, or rehabilitation "is unlikely to be provided or accepted without the coercive intervention of the court," I.C. § 31-34-1-1—guards against unwarranted interference in family life and ensures that coercion is ordered only where parents are unable to provide for children's needs, not when parents simply have difficulty doing so. *In re D.J.*, 68 N.E.3d at 580.

[17] Here, the trial court's July 29, 2016, order finding Children to be CHINS included relatively detailed findings concerning Mother's history of narcotics use, her compliance or lack thereof with DCS's drug testing and treatment referrals, and her mental health history. The trial court's findings as to Children's need for care, treatment, or rehabilitation are largely formulaic, and the record behind them—which focused on Mother's problems with little reference to effects on Children—might not have been sufficient in itself to support the CHINS adjudication.

[18] By the time of the dispositional hearing, however, additional information in the form of Children's drug test results had been obtained, and the trial court included that information among its findings. The drug test results indicated that D.M. had tested positive for exposure to methamphetamine, despite Mother's statements that she had not used the drug in the home and Children's statements that they did not know anyone who used drugs. Further, Mother's engagement with substance use testing continued to be irregular at best, her engagement with drug treatment services had not yet begun in earnest, and Mother had not yet obtained mental health care that she needed. Further, DCS caseworkers remained concerned that Mother's use of narcotics could impair her ability to provide adequate supervision for children.

[19] To the extent Mother's brief notes the many positive facets of DCS's reports and the evidence presented at the various hearings in the case, we agree that this all reflects positively on Mother. But we are not free to second-guess the weight and credibility the trial court afforded to the evidence presented to it. We thus conclude that there was sufficient evidence to sustain the CHINS adjudication.

[20] Affirmed.

Najam, J., and May, J., concur.