ATTORNEY FOR APPELLANT
GR.J. (MOTHER)
Roberta L. Renbarger
Renbarger Law Firm
Fort Wayne, Indiana

ATTORNEY FOR APPELLANT
J.J. (FATHER)
Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES
Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED

Feb 07 2017, 1:31 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 02S03-1610-JC-548

IN RE: THE MATTER OF D.J. AND G.J.,
CHILDREN IN NEED OF SERVICES;
GR.J. (MOTHER) AND J.J. (FATHER)

*Appellants,*

v.

INDIANA DEPARTMENT OF CHILD SERVICES,

*Appellee.*

Appeal from the Allen Superior Court, Nos. 02D08-1507-JC-324 and 02D08-1507-JC-325
The Honorable Charles F. Pratt, Judge
The Honorable Lori K. Morgan, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 02A03-1512-JC-2207

**February 7, 2017**

**Slaughter, Justice.**

We have previously held that a tardy notice of appeal forfeits the aggrieved party's right to appeal, but does not deprive a reviewing court of jurisdiction to hear the appeal. Today, we hold that a premature notice of appeal likewise is not fatal to appellate jurisdiction. The two prerequisites for invoking appellate jurisdiction were both present here—an appealable trial-court order and entry of the notice of completion of clerk's record in the chronological case summary.

The trial court found that Parents' two minor children were "in need of services"—meaning they had been abused or neglected at home and were unlikely to receive the care or treatment they needed without a court's coercive intervention. A child-in-need-of-services (CHINS) determination is not a final judgment. Finality does not occur until the court, after a dispositional hearing, resolves such questions as what specific services are warranted and whether the child should be placed in an alternative living arrangement, either provisionally or permanently. Although the CHINS determination was not final, Parents filed notices of appeal challenging only this interlocutory ruling and not the court's later dispositional order. The Court of Appeals concluded that it lacked jurisdiction and dismissed Parents' appeal. We do not take issue with the Court's decision to dismiss the appeal; it is never error to dismiss a forfeited appeal. The Court's only error was its stated reason for dismissal—lack of jurisdiction.

Despite Parents' forfeited appeal, we exercise our discretion to decide their case on its merits. Having previously granted transfer in this CHINS matter, we reverse the trial court. The record does not support the court's finding that Parents needed the court's coercive intervention to provide for their Boys' needs at the time of the dispositional hearing.

**Factual and Procedural History**

Gr.J. and J.J. (Parents) have two young sons, D.J. and G.J. (Boys). On the evening of July 16, 2015, Gr.J. (Mother) was bathing the Boys in their home's upstairs bathroom. D.J. was four years old at the time; G.J. was fourteen months. At some point, Mother left them alone in the bathtub for approximately two minutes while she went downstairs to let out the family's dog. When she returned, she found the younger son, G.J., lying face down in the water and immediately "grabbed him out."

Mother flipped him over to allow any remaining water to drain from his body and saw "his back was super pale". She carried him to the bedroom and called 9-1-1.

While waiting for the ambulance to arrive, Mother laid G.J. on the family's bed and attempted "CPR like activity". Although he "wasn't breathing easily or well by any means", he did begin gurgling. As Mother tried to resuscitate him, he defecated on himself. When emergency medical technicians arrived, they cleaned him with a towel and transported him to Lutheran Hospital in Fort Wayne.

In the early-morning hours of July 17, Detective Renee Davis of the Fort Wayne Police Department and Joseph Sims, a family case worker with the Indiana Department of Child Services (Department), obtained Parents' consent to inspect the family home. Upon entering the house, Sims "almost gagged on the smell of feces and animal feces and urine." He said the smell "smack[ed] you in the face when you walk[ed] in the front door." Likewise, Detective Davis noted, "there was an overwhelming odor when I walked in the house . . . probably an animal definitely urinating." Detective Davis said the odor "made [her] cough" and "kicked [her] asthma up." Sims and Detective Davis also said the house "was in complete disarray" and "very cluttered" with "stuff everywhere."

During the home inspection, Sims noticed it had no beds for the Boys—no crib for G.J. and no toddler bed for D.J. When asked about the family's sleeping arrangements, J.J. (Father) said they practiced co-sleeping, where all four sleep together in the same bed. After he and Mother researched co-sleeping's pros and cons, they decided to try it and found it helped Mother to breastfeed G.J., to alleviate D.J.'s night terrors, and to help with his autism.

Based on the bathtub incident, the messy condition of the family home, and the family's co-sleeping practice, the Department removed the Boys from their Parents' care and placed them with their grandparents. On July 21, the Department filed a petition alleging the Boys to be children in need of services under Indiana Code section 31-34-1-1 and began services with the family. Required "home-based" services included parental psychological evaluations, drug screens, parenting curriculum, homemaker services (cleaning the home and keeping it clean), home-based individual and family therapy, unsupervised visitation for Father, and supervised visitation for Mother.

When the trial court held its fact-finding hearing in October 2015, Parents had completed or were in the process of completing all services the Department required. The Department deferred family homemaker services because Parents had already cleaned the house, and the court deferred Father's psychological evaluation for unspecified reasons. On November 13, the court issued a written order containing extensive findings and conclusions. It found the Boys to be children in need of services and scheduled a dispositional hearing for December 3. The court issued its Dispositional Hearing Order on January 5, 2016, maintaining the status quo: the Boys were to stay with Grandparents; Father had unsupervised parenting time; Mother had supervised parenting time. The trial clerk issued the notice of completion of clerk's record on January 6.

Mother and Father filed separate notices of appeal (on December 11 and 14, respectively) challenging the CHINS determination *after* the court held the dispositional hearing but *before* it entered the dispositional order. After full briefing, the Court of Appeals dismissed Parents' appeal with prejudice based on lack of jurisdiction. Parents then sought transfer, which we granted.

**Standard of Review**

We review jurisdictional questions de novo, giving no deference to lower courts. See In re Adoption of J.T.D., 21 N.E.3d 824, 827 (Ind. 2014) (citation omitted). We likewise review de novo the significance and scope of Indiana case law and court rules. Miller v. Danz, 36 N.E.3d 455, 457 (Ind. 2015) (citation omitted).

When reviewing a trial court's CHINS determination, we do not reweigh evidence or judge witness credibility. In re S.D., 2 N.E.3d 1283, 1286 (Ind. 2014). "Instead, we consider only the evidence that supports the trial court's decision and [the] reasonable inferences drawn therefrom." Id. at 1287 (citation, brackets, and internal quotation marks omitted). When a trial court supplements a CHINS judgment with findings of fact and conclusions law, we apply a two-tiered standard of review. We consider, first, "whether the evidence supports the findings" and, second, "whether the findings support the judgment." Id. (citation omitted). We will reverse a CHINS determination only if it was clearly erroneous. In re K.D., 962 N.E.2d 1249, 1253 (Ind. 2012). A decision is clearly erroneous if the record facts do not support the findings or "if it applies the wrong legal standard to properly found facts." Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997) (citation omitted).

**Discussion and Decision**

This case presents two issues: one procedural, one substantive. Because Parents filed premature notices of appeal, the Court of Appeals held it lacked jurisdiction and dismissed their appeal with prejudice, declining to reach the merits. We hold, first, that appellate jurisdiction is secure; and, second, that the Department failed to prove that Parents required the State's coercive intervention to meet their children's needs. We thus reverse the trial court's determination that the Boys were in need of services.

**I. Parents' premature notices of appeal were not fatal to appellate jurisdiction.**

**A. The determination that a child is in need of services is not a final judgment.**

Within the CHINS context, a court's "finding of CHINS status is a mere preliminary step" to final disposition of the matter. In re J.L.V., 667 N.E.2d 186, 188 (Ind. Ct. App. 1996) (citation omitted). Standing alone, the CHINS finding "d[oes] not constitute a final, appealable judgment." Id. (citation omitted). Even after making a CHINS determination, the court is still required to hold a dispositional hearing to determine next steps in the child's placement, care, treatment, or rehabilitation and the nature and extent of the parent's, custodian's, or guardian's role in fulfilling those steps. Ind. Code § 31-34-19-1. The court must then issue written findings and conclusions in a dispositional decree. Id. § 31-34-19-10. To the extent our case law leaves any doubt, we make explicit that a CHINS determination, by itself, is not a final judgment.

**B. A reviewing court has jurisdiction to hear a forfeited appeal.**

A party initiates an appeal by filing a notice of appeal within thirty days after entry of an appealable order. Usually, the appealable order will be a final judgment, Ind. Appellate Rule 9(A)(1), meaning it disposes of all claims as to all parties, App. R. 2(H)(1). But not all orders must be final to be appealable. Non-final orders that are appealable right away—on an interlocutory basis—include those recited in Appellate Rule 14.

Despite the thirty-day requirement for filing a notice of appeal, timeliness is not a prerequisite to invoking appellate jurisdiction. Stated differently, the reviewing court is not deprived of jurisdiction if the notice is untimely—meaning belated or premature. The only two prerequisites

under our appellate rules are (i) the trial court must have entered an appealable order, and (ii) the trial clerk must have entered the notice of completion of clerk's record on the CCS.

Appellate Rule 8 specifies that "[t]he Court on Appeal acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary." See also Alexander v. State, 4 N.E.3d 1169, 1170 n.3 (Ind. 2014). In contrast, Appellate Rule 9(A)(5) speaks not of jurisdiction but forfeiture: "Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited except as provided in [Post-Conviction Rule] 2." It is noteworthy that "[f]orfeiture and jurisdiction are not the same." In re Adoption of O.R., 16 N.E.3d 965, 970 (Ind. 2014). Forfeiture is "[t]he loss of a right, privilege, or property because of a … breach of obligation[] or neglect of duty." Id. (quoting Black's Law Dictionary 765 (10th ed. 2014)). Jurisdiction, by contrast, refers to "[a] court's power to decide a case or issue a decree," Black's Law Dictionary 980—it "speaks to the power of the court rather than to the rights or obligations of the parties," Adoption of O.R., 16 N.E.3d at 971 (brackets, citations, and emphases omitted).

Here, the notices of appeal indicated, erroneously, that Parents were pursuing an expedited appeal from a final judgment. In fact, Parents filed their respective notices before the trial court had entered a final judgment. By filing notices of appeal from a non-final CHINS determination—and not a final CHINS judgment—Parents forfeited their rights to appeal. The Court of Appeals understandably relied upon the above procedural rules in declining to reach the merits of Parents' appeal, and it had every right to do so. But an untimely notice of appeal does not divest a reviewing court of jurisdiction. See id. at 970-71; App. R. 8.

### C.     A reviewing court may elect to decide the merits of a forfeited appeal.

With the jurisdictional point settled, we consider whether to exercise our discretion to address the merits despite the forfeiture. Although it is never error for an appellate court to dismiss an untimely appeal, the court has jurisdiction to disregard the forfeiture and resolve the merits. Adoption of O.R., 16 N.E.3d at 971-72.

Indiana's rules and precedent give reviewing courts authority "to deviate from the exact strictures" of the appellate rules when justice requires. In re Howell, 9 N.E.3d 145, 145 (Ind. 2014). "Although our procedural rules are extremely important . . . they are merely a means for achieving the ultimate end of orderly and speedy justice." American States Ins. Co. v. State ex rel. Jennings,

258 Ind. 637, 640, 283 N.E.2d 529, 531 (1972). See also App. R. 1 ("The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules."). This discretionary authority over the appellate rules allows us to achieve our preference for "decid[ing] cases on their merits rather than dismissing them on procedural grounds." Adoption of O.R., 16 N.E.3d at 972 (citation omitted). See also In re Adoption of T.L., 4 N.E.3d 658, 661 n.2 (Ind. 2014) (considering merits after denying appellees' motion to dismiss based on procedural defect); Pabey v. Pastrick, 816 N.E.2d 1138, 1142 (Ind. 2004) (stating that "dismissal with prejudice was not the appropriate remedy for . . . noncompliance with" Appellate Rule 9.).

These principles have been borne out in Court of Appeals precedent that departed from the strictures of the appellate rules to consider the merits of procedurally similar CHINS cases—also concerning premature notices of appeal. See In re J.V., 875 N.E.2d 395, 398 (Ind. Ct. App. 2007) (electing to decide merits of CHINS appeal, despite premature notice of appeal, because trial court held dispositional hearing and issued dispositional decree before Court of Appeals obtained jurisdiction), trans. denied. See also In re T.Y.T., 714 N.E.2d 752, 756 n.3 (Ind. Ct. App. 1999); In re M.K., 964 N.E.2d 240, 244 (Ind. Ct. App. 2012).

We recently deviated from the appellate rules in Adoption of O.R. due in part to the weighty parental interest involved. Indeed, it is well established that "the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." 16 N.E.3d at 972 (citing Pierce v. Soc'y of Sisters, 268 U.S. 510, 534–35 (1925)).

Given the purpose of our appellate rules, our preference for deciding cases on their merits, our Court of Appeals precedent, and the important parental interest at stake, we choose to disregard Parents' forfeiture and reach the merits. See Adoption of O.R., 16 N.E.3d at 971-72.

**II.     On the merits, the trial court committed clear error in holding that coercive intervention was required to enable Parents to fulfill their children's needs.**

We recently held that "[n]ot every endangered child is a child in need of services," and not every endangered child needs "the State's *parens patriae* intrusion into the ordinarily private sphere of the family." S.D., 2 N.E.3d at 1287 (citation omitted). To prove a child is "in need of services", the Department must prove three statutory elements by a preponderance of the evidence:

7

1.      The child is under eighteen (18) years of age;

2.      The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

3.      The child needs care, treatment, or rehabilitation that:

   a.      the child is not receiving; and
   b.      is unlikely to be provided or accepted without the coercive intervention of the court.

See I.C. §§ 31-34-1-1; 31-34-12-3.

We agree with the trial court that the Department proved the first two elements by a preponderance of the evidence. The Boys are younger than eighteen years old. And Mother's decision to leave them alone, unsupervised in a bathtub for two minutes, seriously endangered their physical or mental condition. Also endangering them was the family's unkempt, unclean, foul-smelling home.

The third element, however—that Parents were unlikely to attend to the Boys' care or treatment without the court's coercive intervention—is not sufficiently supported by the record. The point of a CHINS inquiry is to "protect children, not [to] punish parents." In re N.E., 919 N.E.2d 102, 106 (Ind. 2010) (citation omitted). To that end, the third element "guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the *ability* to provide for their children,' not merely where they 'encounter *difficulty* in meeting a child's needs.'" S.D., 2 N.E.3d at 1287 (citation omitted) (emphases in original). When determining CHINS status under Section 31-34-1-1, particularly the "coercive intervention" element, courts "should consider the family's condition not just when the case was filed, but also when it is heard." Id. at 1290 (citation omitted). Doing so avoids punishing parents for past mistakes when they have already corrected them. See id. at 1289–90.

The trial court's CHINS order included factual findings that amply support its conclusion that Parents required coercive intervention *early* in the CHINS process. But those findings did not show that Parents needed *ongoing* coercive intervention throughout the process, and they certainly did not show that Parents needed such intervention by the time of the fact-finding hearing months

8

later. To the contrary, the record shows that Parents eventually cooperated with the Department's services and had satisfactorily completed all services (except those deferred by the Department or the court) by the time of the fact-finding hearing.

Chris Spurling, a social worker, testified at the hearing that "the family ha[d] completed the parenting curriculum[,] which was the main goal". He said Parents were "[v]ery open and willing", "engaged in services" and were "serious about doing what the court and the Department … asked them to do." Joesi Shah, a family coach and caseworker who supervised Mother's visits with the Boys, testified she could tell Parents completed the parenting curriculum because they began implementing it during visits. Kristen Matheson, a clinical therapist who treated Mother individually and Parents collectively, described them as "[e]xtremely compliant" with services, "always willing to meet with me and make it work at scheduling everything." Matheson testified that, by the time of the fact-finding hearing, Parents did not require more individual or family therapy and had met all their goals. She opined that Mother might need additional therapy, but only if she were criminally charged for the bathtub incident. Lastly, evidence in the record documented that Parents had voluntarily secured individual and family services to treat or cope with D.J.'s autism.

Because we conclude the Department did not prove the third element by a preponderance of the evidence, we reverse the trial court's CHINS determination.

**Conclusion**

We hold that Parents' premature notices of appeal did not deprive the Court of Appeals of jurisdiction to hear the appeal. Given the importance of the family interest at issue here, we exercise our discretion to decide this case on its merits. Having previously granted transfer, we reverse the trial court's CHINS determination, concluding that the Department failed to prove by a preponderance of the evidence that Parents required the court's coercive intervention to ensure the Boys were properly cared for.

Rush, C.J., and Rucker, David, Massa, JJ., concur.