## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2019, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Matter of J.G. and J.T. (Minor Children), Children in Need of Services; | February 4, 2019 |
| | Court of Appeals Case No. 18A-JC-2116 |
| S.B. (Mother), | |
| *Appellant-Respondent,* | Appeal from the Hendricks Superior Court |
| v. | The Honorable Karen M. Love, Judge |
| Indiana Department of Child Services, | Trial Court Cause Nos. 32D03-1709-JC-141 32D03-1709-JC-143 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

S.B. ("Mother") appeals the trial court's adjudication of her two minor children, J.G. and J.T. ("the Children"), as children in need of services ("CHINS").[1] Mother raises a single issue for our review, which we restate as the following two issues:

> 1. Whether the trial court clearly erred when it concluded that the Children's physical or mental conditions are seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of Mother to supply the Children with necessary supervision.

> 2. Whether the trial court clearly erred when it concluded that the care, treatment, or rehabilitation the Children need is unlikely to be provided or accepted without the coercive intervention of the court.

We affirm.

# Facts and Procedural History

Mother is the adoptive mother of the Children, both of whom have extensive special needs. In particular, J.G. cannot speak, is mentally delayed, is deaf or nearly deaf, and has chronic lung disease, chronic respiratory failure, congenital osteodystrophy, and Melnick-Needles syndrome. J.T. is quadriplegic, blind, cannot speak, is intellectually challenged, cannot care for herself or urinate on

---

[1] The adoptive father of the Children does not participate in this appeal.

her own, and has scoliosis and a seizure disorder. Both of the Children need "around the clock supervision." Tr. Vol. 2 at 54-55.

[4] Mother lived with the Children at her residence, and she is a licensed registered nurse. Mother frequently relied on other adults to care for the Children. Occasionally Mother relied on home health nurses, but Mother also relied on close friends, namely, T.H.; T.H.'s boyfriend, P.R.; and Mother's boyfriend, M.S. M.S. in particular frequently stayed overnight at Mother's residence.

[5] In late August of 2017, the Indiana Department of Child Services ("DCS") responded to a report that the Children were unsupervised and that there was substance abuse at Mother's home. The next day, DCS received an additional report that M.S. had sexually abused J.T. at Mother's residence. DCS case managers met Mother at her home, and J.T. was transported to Riley Hospital for an examination. The examination substantiated that J.T. had been the victim of sexual abuse.

[6] Child-abuse professionals at Riley Hospital directed Mother to bring J.T. to a follow-up appointment, but Mother did not do so. Although Mother acknowledged that the report had alleged M.S. as the perpetrator, Mother told DCS case managers that M.S. never had one-on-one contact with J.T. However, she acknowledged that M.S. spent the night at her home several times each week, and she agreed to a safety plan with DCS that was to prevent "any of the [C]hildren . . . to be around [M.S.]" Appellant's App. Vol. 2 at 30.

[7]     Less than one week later, in a follow-up visit with DCS case managers, Mother admitted that she had violated the safety plan by allowing M.S. to be inside her home with the Children present. Mother also admitted that M.S. continued to have a key to her home. And Mother admitted that she knew T.H. suffered from schizophrenia and substance-abuse issues, but Mother "would still allow [T.H.] to supervise and watch the [C]hildren . . . ." Tr. Vol. 2 at 106.

[8]     DCS filed its petition alleging the Children to be CHINS, and the Children were removed from Mother's care. After an ensuing fact-finding hearing in December 2017 and March 2018, the trial court found as follows:

> 31. The Court finds Hannah Lyman[, a DCS family case manager ("FCM"),] is qualified, experienced[,] and credible. Multiple times while Ms. Lyman was the FCM [Mother] told her she did not want to do any services but she wanted to terminate her parental rights. FCM Lyman made specific referrals so [Mother] could visit [the Children] but [Mother] did not.
>
> * * *
>
> 41. [Mother] has not visited [J.G.] while h[is] case has been pending.
>
> 42. Michelle Schwab is a[n] LPN. Ms. Schwab was [J.G.'s] home health care nurse for almost a year. She also cared for [J.T.] a few times.
>
> Court finds Ms. Schwab credible. Ms. Schwab observed [M.S.] in the home with the [C]hildren six or seven days a week in the eight months before the [C]hildren were removed by DCS.

* * *

44. At least once a week[,] [M.S.], [T.H.], or [P.R.] supervised the [C]hildren without [Mother].

45. Ms. Schwab saw [M.S.] drink alcohol to the point of intoxication and to the point he passed out. . . .

46. Ms. Schwab observed [T.H.] caring for the [C]hildren. When she was stable [T.H.] was appropriate but when [T.H.] was in a "sensitive state" she talked crazy and [T.H.] was not an appropriate caregiver.

Ms. Schwab observed [M.S.] pinch [J.T.'s] cheeks and push her head back and forth.

47. [P.R.] is/was [T.H.'s] boyfriend. [Mother] left [P.R.] alone with the [C]hildren at least two times. [P.R.] does not know how to care for [the Children with their] special needs.

48. When [J.G.] gets excited or over[-]tired he has difficulty breathing.

49. As of 12-19-17 [Mother] had not visited with [J.T.] since [J.T.] was removed from [Mother's] care. [Mother] had refused services from DCS. [Mother] indicated she wanted to voluntarily terminate her rights to [the Children]. In mid-November 2017 [Mother] said she changed her mind and wanted services and she provided a few drug screens which were negative. However, when FCM [Emily] Dippold last talked with [Mother] (before 3-1-18) [Mother] was not willing to participate in services.

50. The Court does not find [Mother's] testimony credible. The Court does find that [Mother] did admit she had not visited with

[J.G.] since he was removed from her care.  [Mother] admitted she had seen [J.T.] one time on 2-14-18 since removal.

\* \* \*

54.  Further, after [Mother] was notified that [J.T.], who is non-verbal, blind, and a [quadriplegic], was a victim of sexual abuse and was told the alleged perpetrator was her live-in boyfriend, [M.S.], and she agreed to deny [M.S.] any access to [J.T., s]he continued to allow him in her home and did not require him to surrender his key to the home.  This indicates to the Court that [Mother] will not protect [J.T.] from potential sexual abuse.  [J.T.] is helpless to protect herself and is fully dependent on caregivers twenty-four hours a day.  [Mother] knew that [M.S.] drank alcohol to the point of intoxication and she was warned by home health care nurse Schwab that [M.S.] acted sexually inappropriately with her yet [Mother] continued to allow [M.S.] access to [J.T.] and continued to leave [the Children] in his care.

Further, [Mother's] failure to visit [J.T.] until approximately two weeks before the last day of the fact-finding hearing indicates to the Court that [Mother] does not really care about [J.T.] and it is unlikely that [Mother] will protect [J.T.] from individuals who may want to abuse [J.T.] in the future.  [Mother] does not recognize the risk to [J.T.] and she needs professional help to learn how to recognize the risk and how to take appropriate precautions to protect [J.T.]

\* \* \*

56.  . . . [J.G.] needs twenty-four[-]hour[-]a[-]day care by someone who is trained to recognize his special health needs and health issues and who can provide [J.G.] safe[,] appropriate supervision.  [Mother] has left [J.G.] in the care of [T.H.] and others who were not able to appropriately supervise [J.G.] . . .

57. [Mother's] statements that she wanted to terminate her parental rights and [Mother's] failure to visit [J.G.] at all during the six months this case has been pending indicates to this court that she does not care about [J.G.'s] welfare especially his mental conditions (emotions). Based on the testimony presented the court concludes that [J.G.] can interact with and enjoy the presence and love of others.

Appellant's App. Vol. 2 at 31-33. The court then adjudicated the Children to be CHINS. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[9] Mother appeals the trial court's adjudication of the Children as CHINS. Our Supreme Court recently set out our standard of review:

> When reviewing a trial court's CHINS determination, we do not reweigh evidence or judge witness credibility. *In re S.D.*, 2 N.E.3d 1283, 1286 (Ind. 2014). "Instead, we consider only the evidence that supports the trial court's decision and [the] reasonable inferences drawn therefrom." *Id.* at 1287 (citation, brackets, and internal quotation marks omitted). When a trial court supplements a CHINS judgment with findings of fact and conclusions law, we apply a two-tiered standard of review. We consider, first, "whether the evidence supports the findings" and, second, "whether the findings support the judgment." *Id.* (citation omitted). We will reverse a CHINS determination only if it was clearly erroneous. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). A decision is clearly erroneous if the record facts do not support the findings or "if it applies the wrong legal standard to properly found facts." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997) (citation omitted).

*Gr. J. v. Ind. Dep't. of Child Servs. (In re D.J.)*, 68 N.E.3d 574, 577-78 (Ind. 2017) (alterations in original).

### Issue One: Necessary Supervision

Mother's first contention on appeal is that the trial court erred when it concluded that the Children's physical or mental health is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of Mother to supply the Children with necessary supervision. *See* Ind. Code § 31-34-1-1(1) (2018); Appellant's App. Vol. 2 at 32-33. The entirety of Mother's argument on this issue as it relates to both J.G. and J.T. is simply a request for this Court to disregard the evidence most favorable to the trial court's judgment and to instead consider only the evidence Mother deems favorable to her desired conclusion. In other words, Mother's argument is entirely premised on having this Court disregard our standard of review, which we will not do.

Mother has not carried her burden on appeal of demonstrating trial court error on this issue. The trial court's findings as set out above are supported by the record—indeed, Mother does not actually challenge the trial court's findings as set out above, she just ignores them—and the court's findings support its conclusion. We affirm the trial court on this issue.

### Issue Two: Coercive Intervention

Mother next asserts that the trial court's conclusion that the Children are unlikely to receive needed care, treatment, or rehabilitation without the coercive intervention of the court is clearly erroneous. But, again, the entirety

of Mother's argument on this issue contravenes our standard of review as Mother simply requests this Court to consider only evidence that the trial court did not rely on. We will not disregard our standard of review. As with her first issue on appeal, Mother has not carried her burden on appeal of demonstrating trial court error, and, having reviewed the record, we cannot say that the trial court's judgment on this issue is clearly erroneous. Accordingly, we affirm the court's adjudication of the Children as CHINS.

[13] Affirmed.

Pyle, J., and Altice, J., concur.