This matter has come before the Indiana Supreme Court on a petition to transfer jurisdiction, filed pursuant to Indiana Appellate Rules 56(B) and 57, following the issuance of a decision by the Court of Appeals. The Court has reviewed the decision of the Court of Appeals, and the submitted record on appeal, all briefs filed in the Court of Appeals, and all materials filed in connection with the request to transfer jurisdiction have been made available to the Court for review. Each participating member has had the opportunity to voice that Justice's views on the case in conference with the other Justices, and each participating member of the Court has voted on the petition.
Being duly advised, the Court DENIES the petition to transfer.
Massa, J., Slaughter, J., and Goff, J., vote to deny transfer.
David, J., dissents to the denial of transfer with separate opinion in which Rush, C.J., joins.
David, Justice, dissenting.
I respectfully dissent from the denial of transfer in this case as I believe transfer should be granted and the trial court reversed. Here, Mother and Father had two children together. Pursuant to their divorce agreement, the parties shared legal custody and Mother had sole physical custody with Father having parenting time pursuant to the guidelines. Mother has subsequent children from a different father and has been the subject of child in need of services (CHINS) actions. She has mental health issues and a history of substance abuse. Unfortunately, Father was not in the picture for the parties' children for several years as Mother interfered with his access to the children.
*33 In the latest CHINS action, the children were removed from Mother's care because she was under the influence of drugs and was suffering from paranoid delusions. Additionally, the home and the children's belongings were in poor condition. All of the children, including Father's, were placed in foster care. Father was permitted to have supervised visits with his children.
During a June 2018 fact-finding hearing, the court found all Mother's children to be CHINS. With regard to Father's children, the Court found that because he "has not taken any steps to maintain contact with his children, the intervention of the [c]ourt is needed to assist in developing his relationship with his children." (App. Vol. II at 147.) Father appealed and challenged the sufficiency of evidence underlying the CHINS adjudication for his two children and the Court of Appeals affirmed.
I would reverse the lower court, give custody of the children to Father and close the CHINS case as it pertains to Father. I do not believe that DCS met the statutory guidelines for determining whether the children were CHINS. Indiana Code section 31-34-1-1 (2018) provides:
A child is a child in need of services if before the child becomes eighteen (18) years of age:
(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
While there is no doubt that Mother was incapable of caring for the children without the coercive intervention of the court, there is no evidence to suggest Father is unable to provide the children with necessary food, clothing, shelter, medical care, education or supervision and that the coercive intervention of the court is needed. On the contrary, the evidence shows that Father has the ability and means to care for the children, including providing them with needed counseling. The record reflects that Father was living in a five-bedroom house with his wife and stepchildren where there was room for his two children with Mother. He was employed full time and the family had sufficient income to support the children.
I agree with Father that his lack of prior contact with the children alone is not enough for a CHINS finding with regard to him. While DCS and the lower courts were critical of his lack of contact with the children and his acknowledgement that he knew Mother was unfit but did not take more aggressive action to see his children or have the parties' custody arrangement altered, I note several things.
First, a CHINS adjudication may not be based solely on conditions that no longer exist. Instead, the trial court should also consider the parents' situation at the time the case is heard. In re D.J. v. Indiana Dep't of Child Servs. , 68 N.E.3d 574, 580 (Ind. 2017) (citation omitted).
Here, while Father may have been out of the picture prior to the present CHINS action, once it was filed, he actively participated in supervised visits and sought custody of his children. Even with DCS now involved, Father could have looked the other way. Instead, he has sought custody of the children. The Guardian ad Litem informed the court that "[M.Q.] and [My. B.] both enjoy their visits with their father," and "[t]hey've actually stated that they *34 would like to move home with him...." (Tr. Vol. II at 176.) I do not understand why DCS would thwart the efforts of a man willing and able to parent his children-regardless of his prior absence-and instead leave them separated from each other in foster care.
Second, Father is not the only noncustodial parent to face this situation where he is denied meaningful access to his children. While it is easy to judge him for not making more of an effort, if Mother wanted to keep him away from his kids, she could-and it seems she did-make it very difficult for him to see them. Indeed, evidence in the record reflects that Mother threatened to have Father arrested and filed for protective orders against him to prevent him from seeing his children. Further, when he sought more time with his children an altercation with Mother's husband ensued. It would have been disruptive to his well-being and safety and perhaps also that of the children for him to try to more forcefully intervene. In my view, the unfortunate circumstances that prevented Father's involvement in his children's lives should not be held against him.
Third, a CHINS determination has consequences for Father. Even though our Court of Appeals notes that this isn't about punishing the Father but about the well-being of the children, the CHINS adjudication does have some punitive impact on Father. His name is entered into the state's child welfare system as being substantiated for neglect and/or abuse. This isn't appropriate in light of the circumstances.
I do not understand the lower courts' conclusion that the CHINS case should continue and that Father only be given supervised visits when the Father did not abuse or neglect the children and was not the reason the CHINS case was opened. At the very least, the children should have been placed with him and not in foster care during the pendency of the case because our statute requires that children be placed in the least restrictive and most family like setting. Ind. Code § 31-34-19-6.
Mother denied Father access to his children and now DCS is limiting his access. I do not believe this is what is in the best interest of these children nor do I believe that noncustodial parents should face such a battle to gain custody of their children when the custodial parent is not capable of caring for them and took steps to deny the noncustodial parent access. It is unfortunate Father was denied his children and the children their Father for so long. This was an opportunity for the lower courts to make things right for these children and their Father and they failed to take advantage of it. I would reverse the trial court, give custody of the children to Father and close the CHINS case.
Rush, C.J., joins.