## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2019, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John A. Kraft
Young, Lind, Endres & Kraft
New Albany, Indiana

ATTORNEY FOR APPELLEE,
CITY OF MADISON; CITY OF
MADISON HISTORIC DISTRICT
BOARD OF REVIEW; AND
CAMILLE B. FIFE, IN HER
CAPACITY AS PRESERVATION
PLANNER FOR THE OFFICE OF
HISTORIC PRESERVATION OF
THE CITY OF MADISON AND AN
EMPLOYEE OF THE CITY OF
MADISON

William Joseph Jenner
Jenner & Pattison
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas L. Imes, Maryanne W. Imes, and St. Anne 420N, LLC,

*Appellants-Plaintiffs,*

v.

City of Madison; City of Madison Historic District Board of Review; The Westerly Group, Inc.; Camille B. Fife; Camille B.

November 21, 2019

Court of Appeals Case No.
19A-PL-821

Appeal from the Jefferson Circuit Court

The Honorable W. Gregory Coy, Special Judge

Trial Court Cause No.
39C01-1305-PL-466

Fife in her capacity as Preservation Planner of the Office of Historic Preservation of the City of Madison and an Employee of Madison, IN; Duke Energy Indiana, LLC; and Camille B. Fife, as an Agent and Employee of the Westerly Group, Inc.,

*Appellees-Defendants.*

**Pyle, Judge.**

# Statement of the Case

This underlying case stems from a statutorily created, private-right-of-action lawsuit brought by landowners in the historic district of Madison, Indiana against various defendants regarding a Madison historic ordinance. Appellants-Plaintiffs, Thomas L. Imes ("Thomas"), Maryanne W. Imes ("Maryanne") (collectively, "the Imeses"), and St. Anne 420N, LLC ("St. Anne") appeal the trial court's grant of summary judgment to Appellee-Defendants, City of Madison ("the City"), City of Madison Historic District Board of Review ("Historic Board"), Camille B. Fife ("Fife") in her capacity as Preservation

Planner of the Office of Historic Preservation of the City and as an employee of the City.[1]

[2] In this appeal, the Imeses and St. Anne attempt to challenge the trial court's order granting summary judgment to some, but not all, of the defendants in this underlying case on some, but not all, of the claims raised in the complaint. We *sua sponte* conclude that because the trial court's order was neither a final judgment nor an appealable interlocutory order, the Imeses and St. Anne have filed a premature appeal. We decline to disregard this premature appeal, and we dismiss the appeal without prejudice to their right to file an appeal once a final judgment has been entered or the order has been certified for an interlocutory appeal.

[3] We dismiss.

# Issue

> Whether the Imeses and St. Anne have prematurely appealed because the trial court's order granting summary judgment was neither a final judgment nor an appealable interlocutory order.

---

[1] The trial court also granted summary judgment to the City, Historic Board, and Fife on claims brought by Plaintiff, Joe Hammond ("Hammond"). Additionally, the trial court granted summary judgment in favor of Defendant, Duke Energy ("Duke Energy"), in relation to a claim filed against it by Hammond. Hammond does not appeal the trial court's grant of summary judgment to any of these defendants.

## Facts

[4] The Imeses own real estate at 419 Broadway in Madison, Indiana ("the Imeses Property"). St. Anne is a limited liability company, and the Imeses are the sole members. St. Anne owns real estate at 420 Broadway in Madison, Indiana ("the St. Anne Property"). The Imeses Property and the St. Anne Property are located in the historic district of Madison, Indiana.

[5] In 1982, the City adopted an historic preservation ordinance ("the Historic Preservation Ordinance"). Section 151.45 of this ordinance established the Historic Board to oversee and apply the provisions of the Historic Preservation Ordinance. This section also provided that the Historic Board was to hold monthly meetings to review applications for certificates of appropriateness (COA)[2] and that the board "shall adopt rules for the transaction of its business and consideration of applications not inconsistent herewith which shall provide for the time and place of regular meetings and for the calling of special meetings." (Appellees' App. Vol. 2 at 118).

[6] In 2009, the City's Common Council adopted an ordinance, Ordinance No. 2009-13 ("the 2009 Ordinance"), which amended Section 151.30 of the Historic Preservation Ordinance to read as follows:

---

[2] A certificate of appropriateness is "[a] document issued by the [Historic Board] allowing an applicant to proceed with a proposed alteration, demolition, or new construction in the Madison Historic District, following a determination of the proposal's suitability according to applicable criteria." (Appellees' App. Vol. 2 at 107).

### § 151.30 CONSIDERATIONS OF BOARD.

It is not the intent of this chapter to discourage new construction or other development, nor to limit it to any one period of architectural style, but to preserve the integrity of the historic buildings and to insure the compatibility of any new work constructed in the historic district. In making its decisions, the Board shall consider the effects of proposed alterations or construction on both the individual structure involved and on the neighborhood surrounding the structure. The Board shall also consider the Madison Residential Design Review Guidelines, contained in Appendix A, and the Madison Commercial Design Review Guidelines, contained in Appendix B. *The Board may amend the Guidelines from time to time subject to approval by the Common Council.*

(App. Vol. 2 at 214) (emphasis added). The Madison Residential Design Review Guidelines ("Residential Guidelines") contained instructions for providing notice of a hearing when a person applies for a COA. Specifically, the Residential Guidelines provided as follows:

> **(5) Notification.** Before meeting with the [Historic Board], written notice of such hearing shall be mailed by the applicant by certified mail with return receipt requested at least ten (10) days before the day of the hearing. These letters must be mailed to each person who owns an interest in the real estate adjoining the property including owners of real estate at corners, across streets, alleys or easements, as well as others who may share a common boundary and all other persons who in the opinion of the Building Inspector have an interest in the outcome of the COA application.

(App. Vol. 2 at 220). Apparently, the Historic Board posted the 2009 Ordinance and the Residential Guidelines on their website.

In August 2011, the Historic Board amended its rules of procedure and the notice procedures for seeking a COA to the following:

> **(5) Notification.** Before the regular [Historic Board] meeting, applicants shall post signs obtained from the Preservation Planner, which announce the date, time, and location of the meeting and the applicant's proposed changes as published in the appropriate legal notice. The sign(s) shall also contain language which specifies that the meeting is open to all residents of Madison who wish to attend. Signs shall be posted at the property for 15 days immediately prior to the meeting and must be visible from all adjoining public streets and alleys. A fee of $2.00 per sign will be charged the applicant at the time of filing.

(Appellees' App. Vol. 2 at 45). At that time, Fife was the Preservation Planner for the Historic Board.

In February 2013, Donald Weist ("Weist"), a resident in Madison's historic district, filed an application for a COA to add a covered porch onto his house ("Weist COA application"). Weist posted signs announcing the Historic Board meeting and followed the amended notice procedure. On February 25, 2013, the Historic Board approved the Weist COA application.

At some point thereafter, the Imeses contacted Fife to tell her that they had not received written notice of the Weist COA application and to inform her that the City's website still contained the certified mail notice procedure. Fife then changed the website to reflect the amended notice procedure.

In May 2013, the Imeses filed an initial complaint, pursuant to INDIANA CODE § 36-7-11-21 or the historic preservation statute, against the Historic Board and

Fife in her capacity as Preservation Planner. INDIANA CODE § 36-7-11-21 creates a "private right of action" for an "interested party"[3] "to enforce and prevent violation of a provision of this chapter or an ordinance adopted by a unit under this chapter[.]" I.C. § 36-7-11-21(b). The crux of their complaint was that the Historic Board had engaged in an "illegal" action by changing the notice procedure without the approval of the City's Common Council and that Fife had engaged in an "illegal" action by changing the website. (App. Vol. 2 at 44, 46). The Imeses sought to enjoin the Historic Board and Fife from following and enforcing the amended notice procedure and to instead require them to follow the notice procedures set forth in the 2009 Ordinance and to change the website to reflect the 2009 Ordinance. The Imeses also sought attorney fees pursuant to INDIANA CODE § 36-7-11-21(f).[4]

[11] Thereafter, the Imeses filed additional amended complaints. In January 2017, the Imeses—with St. Anne and Hammond added as additional plaintiffs—filed a third amended complaint against multiple defendants, including the following: the City; the Westerly Group, Inc. ("the Westerly Group"); the Historic Board; Fife, individually, in her capacity as Preservation Planner, as an employee of the City and the Historic Board, and as an employee of the

---

[3] An "interested party" includes "[a]n owner or occupant owning or occupying property located in a historic district established by an ordinance adopted under this chapter." I.C. § 36-7-11-21(a)(5).

[4] This subsection provides that "[a]n interested party who obtains a favorable judgment in an action under this section may recover reasonable attorney's fees and court costs from the person against who judgment was rendered." I.C. § 36-7-11-21(f).

Westerly Group; and Duke Energy. This third amended complaint contained five counts against various defendants.

[12] All the plaintiffs filed Counts 1 and 2 against all the defendants listed above except Duke Energy. In Count 1, the plaintiffs again raised a claim pursuant to INDIANA CODE § 36-7-11-21, challenging the amended notice procedure and the change to the website and seeking to require the City, the Westerly Group, the Historic Board, and Fife (individually, in her capacity as Preservation Planner, as an employee of the City and the Historic Board, and as an employee of the Westerly Group) to follow the notice procedures set forth in the 2009 Ordinance.

[13] In Count 2, the plaintiffs raised claims and sought treble damages pursuant to INDIANA CODE § 34-24-3-1, also referred to as the Crime Victims Statute, which allows for a person who "suffers a pecuniary loss as a result of a violation of IC § 35-43" or other offenses to "bring a civil action against the person who caused the loss[.]" I.C. § 34-24-3-1. Specifically, the Imeses, St. Anne, and Hammond alleged that the City, the Westerly Group, the Historic Board, and Fife (individually, in her capacity as Preservation Planner, as an employee of the City and the Historic Board, and as an employee of the Westerly Group) had violated various chapters of INDIANA CODE § 35-43 by committing counterfeiting, forgery, criminal conversion, and computer trespass. *See* IND. CODE §§ I.C. § 35-43-5-2(a); 35-43-5-2(d); 35-43-4-3(a); and 35-43-2-3(b), respectively.

[14] The remaining three counts were not brought by all the plaintiffs. The claim in Count 3 of the third amended complaint was raised by Hammond against Duke Energy, and this claim related to the potential placement of a utility pole on Hammond's property. The claim in Count 4 was raised by the Imeses against the Westerly Group, the City, the Historic Board, and Fife (individually, in her capacity as Preservation Planner, as an employee of the City and the Historic Board, and as an employee of the Westerly Group). In Count 4, the Imeses alleged that these defendants had "malicious[ly] misrepresent[ed]" facts regarding the reason for the potential placement of the utility pole on Hammond's property, and they also alleged that these defendants' actions of enforcing the amended notice procedure had denied them notice and the opportunity to be heard at the hearing on the Weist COA application, resulting in a violation of their rights under the 14th Amendment of the U.S. Constitution and Article 1, § 12 of the Indiana Constitution. (App. Vol. 2 at 77).[5] Finally, Count 5 of the third amended complaint was brought by the Imeses and St. Anne against the City. In this count, they alleged that: (1) the City had retaliated against them by issuing an invalid stop-work order for the St. Anne Property; and (2) a member of the City's P.A.C.E. Review

---

[5] We note that the chronological case summary shows that Count 4 of the Imeses' second amended complaint was dismissed under Indiana Trial Rule 12(B)(6) for failure to state a claim in September 2016. There is, however, no indication in the record that any of the five counts contained in the third amended complaint, which is the relevant version of complaint in this case, were ever dismissed.

Committee[6] had made remarks about the Imeses during a hearing and that these remarks had slandered and defamed them.

[15]  The defendants were represented by different attorneys. The City, the Historic Board, and Fife (in her capacity as Preservation Planner and as an employee of the City and the Historic Board) were represented by one attorney, Duke was represented by a second attorney, and the Westerly Group and Fife (as an employee of the Westerly Group) were represented by a third attorney.

[16]  In January 2019, some of the defendants filed for summary judgment on some of the five claims raised in the third amended complaint. Specifically, Duke Energy filed a motion for summary judgment[7] against Hammond on Count 3, and the City, the Historic Board, and Fife (in her capacity as Preservation Planner and as an employee of the City and the Historic Board) filed a motion for summary judgment against the Imeses, St. Anne, and Hammond on Counts 1, 2, and 5. In regard to the summary judgment motion filed by the City, the Historic Board, and Fife, they argued that they were entitled to governmental immunity under the Indiana Tort Claims Act and that the plaintiffs were unable to prove the elements of the alleged offenses under various chapters of INDIANA

---

[6] P.A.C.E. is an acronym for Preservation and Community Enhancement.

[7] Duke Energy's summary judgment motion is not contained in the Appendix.

CODE § 35-43. Their summary judgment motion did not seek summary judgment on Count 4.[8]

[17] The trial court held a summary judgment hearing in March 2019. Thereafter, the trial court granted both the summary judgment motion filed by Duke Energy against Hammond and the summary judgment motion filed by the City, the Historic Board, and Fife (in her capacity as Preservation Planner and as an employee of the City and the Historic Board) against the Imeses, St. Anne, and Hammond. Notably, the trial court's order did not grant summary judgment to the Westerly Group or Fife (as an employee of the Westerly Group), nor did the order contain the "magic language" of Indiana Trial Rule 56(C), indicating that there was no just reason for delay and expressly directing entry of judgment as to less than all issues, claims, or parties. The Imeses and St. Anne, but not Hammond, then filed a notice of appeal.

## Decision

[18] The Imeses and St. Anne argue that the trial court erred by granting summary judgment to the City, Historic Board, and Fife.

[19] We, however, decline to review their challenge at this juncture because the trial court's order that they attempt to appeal was neither a final judgment nor an appealable interlocutory order. *See In re Adoption of S.J.*, 967 N.E.2d 1063,

---

[8] The record on appeals does not indicate that Count 4 of the third amended complaint was dismissed. Nor does the record indicated that the Westerly Group and Fife (as an employee of the Westerly Group) ever filed a summary judgment motion or were ever dismissed from the action.

1065-66 (Ind. Ct. App. 2012). As set forth in Indiana Appellate Rule 2(H), a judgment is a "final judgment" if:

> (1) it disposes of all claims as to all parties; [or]
>
> (2) the trial court in writing *expressly* determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the claims or parties[.]

Ind. Appellate Rule 2(H) (emphasis added). "[I]f a trial court's summary judgment order is not final as to all issues, claims, and parties, the order *must* include the "magic language" set forth in Trial Rule 56(C) to be considered final." *Indy Auto Man, LLC v. Keown & Kratz, LLC*, 84 N.E.3d 718, 721 (Ind. Ct. App. 2017) (emphasis in original). "Otherwise, a summary judgment order disposing of fewer than all claims as to all parties remains interlocutory in nature." *Id.* (citing *Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 385 (Ind. 1998), *cert. denied*). If an order is not a final judgment, then an appellant may appeal the order only if it is an appealable interlocutory order. *See Adoption of S.J.*, 967 N.E.2d at 1066.

[20]     In *D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574 (Ind. 2017), our supreme court discussed the procedural implications of an appellant who files a "premature" or untimely notice of appeal from a judgment that is not a final judgment. *D.J.*, 68 N.E.3d at 578. The *D.J.* Court applied the rational from *In re Adoption of O.R.*, 16 N.E.3d 965 (Ind. 2014), which applied to an untimely notice of appeal that was "belated," and held that a "reviewing court is not deprived of

jurisdiction if the notice is untimely—meaning belated or premature." *Id.* The Court discussed the distinction between "jurisdiction" and "forfeiture" and explained that an appellant's untimely notice of appeal results in the forfeiture of the appellant's right to appeal, not the divestiture of an appellate court's appellate jurisdiction. *Id.* at 579. The *D.J.* Court further explained that when an appellant has forfeited his right to appeal, our appellate courts retain "jurisdiction to disregard the forfeiture and resolve the merits" of the untimely appeal. *Id.* The Court, however, emphasized that "it is never error for an appellate court to dismiss an untimely appeal[.]" *Id.*

[21]  Here, the trial court's order at issue was not a final judgment under Appellate Rule 2(H) nor was it an appealable interlocutory order. The trial court's order was not a "final judgment" under Appellate Rule 2(H)(1) because it did not dispose of all claims as to all parties and because the trial court did not include the "magic language" required to meet the "bright line" rule under Indiana Trial Rule 56(C). *See Indy Auto Man*, 84 N.E.3d at 721 (explaining that the trial court's summary judgment order was not final where it did not dispose of all issues as to all parties and did not include the "magic language" from Trial Rule 56(C) that would have converted the non-final order into a final order). Additionally, the trial court's summary judgment order at issue here is not an appealable interlocutory order as of right under Appellate Rule 14(A) because it does not fall within one of the categories of Rule 14(A) nor is it a discretionary interlocutory appealable order under Appellate Rule 14(B) because the Imeses and St. Anne neither requested the trial court to certify the

interlocutory order nor sought permission from our Court to accept the interlocutory appeal. *See Adoption of S.J.*, 967 N.E.2d at 1066; *see also* App. R. 14. Because the trial court's order is not a final appealable order or an appealable interlocutory order, the Imeses' and St. Anne's attempt to appeal the non-final order is untimely—in this case, premature. *See D.J.*, 68 N.E.3d at 578-79. We decline to disregard this premature appeal, especially here, where the trial court has not yet issued a final order. *See Manley v. Zoeller*, 77 N.E.3d 1227, 1231 (Ind. Ct. App. 2017) ("We do not believe the *D.J.* opinion should be taken as an invitation to open the floodgates to premature appeals from non-final judgments."). Accordingly, we dismiss this appeal without prejudice to their right to file an appeal once a final judgment has been entered or the order has been certified for an interlocutory appeal. *See Indy Auto Man*, 84 N.E.3d at 722 (dismissing the appellant's appeal without prejudice where the summary judgment order being appeal was not a final judgment).

[22] Dismissed.

Robb, J., and Mathias, J., concur.