## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Jennifer A. Joas
Joas Law, LLC
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: Pa.J. and Pi.J. (Children in Need of Services),

M.J. (Mother),

*Appellant*,

v.

Indiana Department of Child Services,

*Appellee*.

July 30, 2020

Court of Appeals Case No. 20A-JC-280

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause Nos.
15C01-1910-JC-40
15C01-1910-JC-41

**Brown, Judge.**

[1] M.J. ("Mother") appeals the trial court's order determining that Pa.J. and Pi.J. are children in need of services ("CHINS"). We affirm.

## *Facts and Procedural History*

[2] Pa.J., who was born in December 2003, and Pi.J., who was born in December 2013, are the children of Mother and K.J. ("Father"). On October 1, 2019, the Indiana Department of Child Services ("DCS") filed a petition alleging the children were CHINS. The petition alleged that, on or about August 20, 2019, around 12:30 a.m., Father and Mother heard the children moving about in their bedroom, Father went to the children's room and yelled at them to shut up, immediately after checking on the children Father saw a bottle in Mother's hand, Father responded by punching Mother in the face, and Mother's injury was so severe that she was required to undergo surgery. It alleged that, "upon hearing the beating, the [children] exited the bedroom and witnessed the violence because they were woken up." Appellant's Appendix Volume II at 33. It also alleged that "this is not the first instance of domestic violence." *Id.*

[3] On December 5, 2019, the trial court held a hearing. The parties entered a "Deny and Submit Agreement" which provided Mother and Father denied the allegations in the CHINS petition and the court would consider evidence outlined by the parties in determining whether the allegations were true. *Id.* at 39. The parties stipulated to the court considering: the intake officer's preliminary inquiry and investigation (the "preliminary report"), the CHINS petition, Mother's mental health assessment and counseling documents, the

assessment completed for the children at the Community Mental Health Center, the clinical summaries for the children, Mother's medical records, records and information from Safe Passage, and any other documentation provided by Mother. The court advised Mother and Father of the allegations, their right to a factfinding hearing and to present witnesses and evidence, their right to counsel, and the court's dispositional alternatives if the children were determined to be CHINS. On December 20, 2019, the parties submitted evidence to the court in accordance with the Deny and Submit Agreement which included proof of insurance carried by Mother, medical enrollment forms, a domestic violence presentation from Safe Passages for Mother, a personal safety plan signed by Mother, a diagnostic assessment for Mother, and treatment plan documents related to Father.

[4] On January 2, 2020, the court held a hearing at which Mother's counsel, Father, and Father's counsel were present. DCS caseworker Carol Mulley indicated Mother was in Florida with the children. The court stated that it had made findings based upon the evidence which had been submitted and found the children were CHINS.

[5] On January 8, 2020, the court issued an Order on Deny and Submit Agreement finding the children to be CHINS and providing:

> 1. There was a domestic violence incident between [Mother] and [Father] on or about August 20, 2019. The violence was severe; [Father] struck [Mother] in the face with his fist, resulting in broken bones. [Mother's] injuries were significant and required surgery.

2. One or more of the children witnessed the domestic violence incident.

3. The parents admit there has been a history of domestic violence.

4. Children witnessing domestic violence between two parents have their mental condition severely endangered. The impact on the children is shown by their reaction when interviewed by the Department of Child Services. The children stated that they were not allowed to talk about the incident. When asked certain questions, the children put their heads down toward the table and said [M]other didn't want them to talk about it. The children did admit that parents sometimes yell. They also stated that they feel safe when [F]ather doesn't yell. The children also stated that on the night of the most recent incident that parents were wrestling and [M]other received a black eye. They heard parents screaming and yelling at each other and also heard banging from the bedroom.

5. [Mother] reluctantly signed the treatment plan that recommended individual therapy from her diagnostic assessment at Community Mental Health Center (CMHC) dated November 21, 2019. Mother denied counseling services or evaluations for the children. The Court also finds it significant that in a CMHC assessment on November 21, 2019 that [Mother], when asked about family strengths, "volunteered no problems with her family." []

6. [Mother] has stated that she does not need help from [DCS].

7. None of the proffered evidence from either [Mother] or [Father] indicates that either parent took the children to be evaluated to see what effect this incident had upon the mental health of the children. The domestic violence education materials submitted show the significant danger to children exposed to domestic violence.

8. The Court also considers the brutality of the most recent incident to be significant. The Court also considers it consistent with mental health issues for [F]ather that following the attack that [F]ather just fell asleep as if nothing happened. The Court also considers it significant that both parents have minimized the severity of the violence and the effect on the children and themselves.

9.  The Court also considers that [Mother] failed to appear for the hearing on January 2, 2020.  Mother was personally advised of the date by the Court.

The Court finds that the parents' continued domestic violence in the presence of the children have seriously endangered their children as set forth herein.  Court also finds that their inactions in addressing the root problems of domestic violence and the effect on the children seriously endangers the children.  Based upon the circumstances outlined herein and the evidence submitted, the Court finds that the children's needs are unmet.  The Court also finds that based upon the actions of the parents outlined in this order and in the evidence presented, that it is unlikely that the parents will address the significant and dangerous problems present in the family and the children without coercive intervention of the Court. . . .

*Id*. at 81-82.  Following a dispositional hearing, the court entered a dispositional order providing that participation by the parents was necessary to facilitate reunification and ordering parents to complete certain services including a home-based counseling program and parenting assessments and all recommendations.

## *Discussion*

[6]     Mother claims the trial court erred in concluding the children were CHINS.  She argues DCS failed to prove the children's physical or mental condition was seriously impaired or that she needed the government's coercive interference to ensure services were in place to properly care for her children.  She states the evidence did not support the finding that one or more of the children witnessed the incident, but concedes the children "did see the aftermath of the battery by observing Mother with a black eye and swollen face."  Appellant's Brief at 12.

She challenges the court's finding "stating that the evidence of Children not wanting to discuss the incident is evidence that there [sic] mental health was seriously impaired." *Id*. at 13. She asserts that, while she may have originally denied counseling services, she and the children ultimately completed counseling evaluations.

[7] We do not reweigh the evidence or judge the credibility of witnesses and consider only the evidence which supports the trial court's decision and reasonable inferences drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1286-1287 (Ind. 2014), *reh'g denied.* We apply the two-tiered standard of whether the evidence supports the findings and whether the findings support the judgment. *Id.* We will reverse a CHINS determination only if it is clearly erroneous. *In re D.J.*, 68 N.E.3d 574, 578 (Ind. 2017). A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts. *Id.*

[8] Ind. Code § 31-34-1-1 provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> > (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
> >
> > > (A) when the parent, guardian, or custodian is financially able to do so; or

(B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

[9] The CHINS statute does not require a court to wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009). Rather, a child is a CHINS when he or she is endangered by parental action or inaction. *Id.* The purpose of a CHINS adjudication is to protect children. *Id.* The Indiana Supreme Court has discussed the impact on children of exposure to domestic violence including psychological and developmental issues. *See S.H. v. D.W.*, 139 N.E.3d 214, 216-217 (Ind. 2020).

[10] To the extent Mother does not challenge the trial court's findings of fact, the unchallenged facts stand as proven. *See In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (failure to challenge findings by the trial court resulted in waiver of the argument that the findings were clearly erroneous), *trans. denied*. Further, where there is evidence sufficient to support the trial court's ultimate findings on the elements necessary to sustain the judgment, we may find that an erroneous finding is merely harmless surplusage that did not prejudice the appellant and is not grounds for reversal. *See In re B.J.*, 879 N.E.2d 7, 20 (Ind. Ct. App. 2008), *trans. denied*.

[11] The trial court found that there was a domestic violence incident between Mother and Father on or about August 20, 2019, that the violence was severe, that Father struck Mother in the face with his fist resulting in broken bones, and that Mother's injuries were significant and required surgery. Mother does not challenge these findings. The preliminary report stated Mother "was beat up by [Father] with the children present," Mother "initially reported trying to break up a fight between three men and was hit in the face," she "later admitted her husband hit her with his fist," she "did sustain broken bones from this incident," "[b]oth parents admitted to domestic incidents occurring in the past," and "[t]here were concerns for [Father] drinking alcohol." Appellant's Appendix Volume II at 23. According to the preliminary report, Mother indicated that she and Father are divorced but were dating and living together inconsistently, Father has mental health issues that have not been addressed, he was screaming and not making a lot of sense on the night of the incident, she told him "to quit yelling and he got even more worked up," he then used his fist and punched her in the face, he "fell asleep afterwards as if everything was normal," and the following day she went to the hospital and Father went to work. *Id.* The report stated Mother "denied counseling services or evaluations for herself and the children." *Id.*

[12] Also according to the preliminary report, Father indicated that he and Mother were drinking and arguing, Mother "heard the children wake up and insisted he do something about it," he "cursed at the children to go back to bed," "[w]hen he turned around, [Mother] was charging at him with a glass bottle of Crown

Royal," he "instantly punched [Mother] in her face twice," he "heard one of the children say something but denied they witnessed the incident," and he "admitted that the children are aware of what happened even if they did not witness the incident." *Id*. The report further provided that the children were interviewed but were observed to be hesitant to communicate about the incident, "FCM was informed by the children they were not allowed to talk about the incident," "[w]hen asked certain questions, they faced their heads down towards the table and stated their mother did not want them to talk about it," and the children reported that, on the night of the incident, their parents were wrestling, Mother received a black eye, they heard their parents screaming at each other, they heard a lot of banging from the bedroom, and they denied witnessing any physical altercations between their parents that night. *Id*. The diagnostic assessment history completed for Mother on November 21, 2019, provides in part that she "appeared to reluctantly sign the treatment plan" which recommended individual therapy, indicated she did not want anyone else involved in treatment, and "denie[d] family member(s) having mental health problems." *Id*. at 64. Mother "volunteered no problems with her family." *Id*. at 69.

[13] To the extent Mother invites us to reweigh the evidence, we are unable to do so. *See In re S.D.*, 2 N.E.3d at 1286. The court was able to consider the submitted materials and Mother's actions and omissions, relationship with Father, and ability to protect the children. As noted, the CHINS statute does not require that a court wait until a tragedy occurs to intervene. *See In re A.H.*, 913 N.E.2d

at 306. There is sufficient evidence to support the trial court's ultimate findings on the elements necessary to sustain the judgment. We conclude that the judgment reached by the trial court is not clearly erroneous.

[14] For the foregoing reasons, we affirm the trial court's order.

[15] Affirmed.

Robb, J., and Crone, J., concur.