Riley, Judge.
STATEMENT OF THE CASE
[1] Appellant-Respondent, J.M. (Father), appeals from the trial court's determination that his minor child, B.T. (Child), is a child in need of services (CHINS).
[2] We reverse.
ISSUE
[3] Father presents us with two issues on appeal, one of which we find to be dispositive and restate as: Whether the trial court's determination that Child is a CHINS is clearly erroneous.
FACTS AND PROCEDURAL HISTORY
[4] Child was born to B.T. (Mother) in July 2018. Child has an older sibling, L.T., who has a different biological father than Child. Mother did not inform Father about Child's birth. On February 16, 2018, Child and L.T. were removed from Mother's care based upon reports of neglect and Mother's substance abuse. Mother tested positive for methamphetamines, amphetamines, cocaine, and marijuana. Mother admitted that she abused illegal substances and that others in her home did also. Child was placed in the care of a relative.
[5] Preliminary investigation revealed that Father was Child's putative father. On February 20, 2018, the State filed a petition alleging that Child was a CHINS due to Mother's neglect and substance abuse. As to Father, the State alleged that he had "not successfully demonstrated an ability and willingness to appropriately parent [Child], [and he is] unable to ensure [Child's] safety and wellbeing while in the care and custody of [Mother]." (Appellant's App. Vol. II, p. 29). Father did not appear for the initial hearing on the CHINS petition, and the trial court continued his initial hearing until March 6, 2018. In its petition, DCS requested that the trial court not enter an order for parenting time for Father until he appeared in court, and the trial court granted that request.
[6] On March 6, 2018, the trial court held Father's initial hearing. The trial court appointed counsel for Father and entered a denial of the CHINS allegations on Father's behalf. Pursuant to Father's request, the trial court entered an order directing Father to undergo genetic testing to establish paternity of Child. The trial court noted that it would enter no parenting time order for Father until the results of the genetic testing confirmed his paternity of Child. A hearing in the paternity matter was set for April 16, 2018.
[7] On June 12, 2018, the trial court held a fact-finding hearing at which Mother admitted that Child was a CHINS and that she required the assistance of DCS to address her substance abuse. Father did not object to Mother's admissions but requested *667 a continuance of the CHINS proceedings as to him to allow genetic testing to be completed. DCS did not object to Father receiving a continuance. The trial court adjudicated Child a CHINS based on Mother's admissions and set the matter for disposition as to Mother. The trial court found that paternity had yet to be established for Father, granted Father's request for a continuance, and set the matter for a pre-trial conference as to Father.
[8] On July 17, 2018, the trial court proceeded to disposition as to Mother. The trial court continued Child's placement with relatives and ordered Mother to participate in a number of services. The trial court set a fact-finding hearing as to Father for August 21, 2018.
[9] Although the exact date is unclear from the record, Father's paternity was established for Child. Father did not appear at the August 21, 2018, CHINS fact-finding hearing. Family case manager Elizabeth Winniran (FCM Winniran) testified that Father had not attended the hearing because he was at work. She had first spoken to Father at his March 6, 2018, initial CHINS hearing. Father had confirmed that he first learned of Child's existence when the CHINS proceedings were initiated and that he wished he had known about Mother's circumstances before the CHINS case had been opened. Father expressed his desire to be part of Child's life, and he had visited with Child on August 18, 2018. FCM Winniran did not know whether Father could support Child, had not visited Father's home, and had not observed Father with Child. FCM Winniran noted that DCS wished to see Father and Child develop a healthy bond and for Father to demonstrate his parenting abilities before closing Father's case. She was concerned that there had not been adequate time for Father and Child to bond.
[10] On August 21, 2018, the trial court entered its Order in which it made the following findings and conclusions:
1. [Child] is a one-year-old child.
2. [Father] has been determined to be the biological father of [Child].
3. [Father] did not know that he was [Child's] alleged father until this cause of action was filed.
4. Since the results of the DNA test, [Father] has had one supervised parenting time session.
5. At this time, the DCS has not had the opportunity to observe any bond between [Father] and [Child].
(Appellant's App. Vol. II, p. 177). The trial court also found that it was in Child's best interests to be placed outside of the home and that remaining in the home would be contrary to Child's safety and welfare. The trial court maintained its previously-entered CHINS adjudication and set the matter for disposition as to Father. DCS's pre-dispositional report filed with the trial court recommended that Child's placement with relatives be continued so that Father could complete services and demonstrate a healthy bond with Child. Child was healthy and stable in her current placement, which DCS considered the least-restrictive placement option, as it allowed for monitoring of Child's safety while Father completed services. On September 11, 2018, the trial court entered its dispositional order continuing Child's placement in relative care and ordering Father to participate in father engagement services. Reunification with Father and Mother remained the permanency plan for Child.
[11] Father now appeals. Additional facts will be provided as necessary.
DISCUSSION AND DECISION
[12] Father argues that the trial court's CHINS determination was not supported *668 by the evidence. When we review a trial court's CHINS determination, we do not reweigh the evidence, we do not judge witness credibility, and we only consider the evidence and reasonable inferences which support the trial court's determination. In re D.J. v. Ind. Dep't of Child Servs. , 68 N.E.3d 574, 577-78 (Ind. 2017). In addition, where, as here, the trial court has entered findings of fact and conclusions of law, we employ a two-tiered review. Id. at 578. First, we consider whether the evidence supports the findings, and second, we consider whether the findings support the judgment. Id. "We will reverse a CHINS determination only if it was clearly erroneous." Id. A CHINS determination is clearly erroneous if the facts in the record do not support the findings. Id.
[13] DCS sought to have Child adjudicated a CHINS under Indiana Code section 31-34-1-1, which provides as follows:
A child is a child in need of services if before the child becomes eighteen (18) years of age:
(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
Thus, an adjudication under this section "requires three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." In re S.D. , 2 N.E.3d 1283, 1287 (Ind. 2014). Requiring that DCS show that a child's needs are unlikely to be met without the intervention of the court "guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the ability to provide for their children,' not merely where they 'encounter difficulty in meeting a child's needs.' " Id. (quoting Lake Cnty. Div. of Family & Children Servs. v. Charlton , 631 N.E.2d 526, 528 (Ind. Ct. App. 1994) ). DCS was required to prove the required elements by a preponderance of the evidence. I.C. § 31-34-12-3.
[14] Here, DCS's specific allegation as to Father was that he had "not successfully demonstrated an ability and willingness to appropriately parent [Child], [and he is] unable to ensure [Child's] safety and wellbeing while in the care and custody of [Mother]. (Appellant's App. Vol. II, p. 29). The trial court based its CHINS determination on a finding that DCS had not had an opportunity to observe any bond between Father and Child. However, the evidence showed that Father did not know of Child's existence before the initiation of the CHINS proceedings, so he did not have an opportunity to demonstrate his ability and willingness to parent and protect Child prior to that time. In addition, throughout the CHINS proceedings, Father was precluded from parenting time with Child until his paternity of Child was established, a process that he requested and in which he cooperated. After Father's paternity was established and prior to the trial court entering its order on fact-finding as to Father, DCS did not evaluate Father's home, did not evaluate Father's ability to provide for Child's needs, and did not observe Father with Child. DCS concedes, and we agree, that this evidence did not support the trial court's CHINS determination *669 as to Father, especially since it did not support a conclusion that Father was unlikely to provide for Child's care without the coercive intervention of the court. I.C. § 31-34-1-1(2)(B) ; In re S.D. , 2 N.E.3d at 1287. Because Father established paternity, there was a presumption that he was a fit caretaker until DCS proved otherwise by the preponderance of the evidence. In re D.B. , 43 N.E.3d 599, 606 (Ind. Ct. App. 2015), trans. denied . Because DCS did not overcome that presumption, we conclude that the trial court's CHINS determination was not supported by the evidence and was clearly erroneous. See In re D.J. , 68 N.E.3d at 578.
CONCLUSION
[15] Based on the foregoing, we conclude that the trial court's CHINS determination was not supported by the evidence.
[16] Reversed.
[17] Bailey, J. and Pyle, J., concur