## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of:
Z.R. *(Child in Need of Services)*

and

D.S. *(Mother)*,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

and

Child Advocates, Inc.,

*Guardian Ad Litem.*

September 30, 2019

Court of Appeals Case No.
19A-JC-720

Appeal from the Marion Superior Court

The Honorable Mark Jones, Judge

The Honorable Rosanne Ang, Magistrate

Trial Court Cause No.
49D15-1809-JC-2318

**Robb, Judge.**

# Case Summary and Issue

D.S. ("Mother") appeals the juvenile court's determination that her minor child, Z.R. ("Child"), is a child in need of services ("CHINS"). Mother raises two issues for our review, which we consolidate and restate as a single issue: whether the juvenile court's CHINS determination is clearly erroneous. Concluding the juvenile court's CHINS determination is clearly erroneous, we reverse the CHINS adjudication.

# Facts and Procedural History

Mother and T.R. ("Father") (collectively, "Parents") are the biological parents of Child, born June 30, 2015.[1] Mother has legal custody of Child,[2] and Father has primary physical custody of Child. Father and Child reside with L.R., Child's paternal grandfather, at his home, and Mother lives alone in an apartment.

On the evening of September 12, 2018, Mother arrived at her apartment to find Father inside. Mother asked Father to leave her home, but he refused. A verbal and physical altercation ensued. As Mother tried to escape from the apartment,

---

[1] Father does not participate in this appeal.

[2] Mother also has another child who is subject to a separate CHINS proceeding and is not in her care.

Father threw her to the ground. Once Mother escaped, she ran outside and called the police.

[4] Officer Lovepreet Singh of the Indianapolis Metropolitan Police Department arrived at the scene, and at that time Mother and Father were both outside alone. Mother told Officer Singh that she had been assaulted by Father and the assault initially occurred inside her apartment where there was a child. He observed bruises and minor cuts on both Mother and Father but was unable to gather information on whether the cuts came from this incident. During Officer Singh's investigation, he did not observe any children. Officer Singh arrested Father, but criminal charges filed as a result of the incident were later dismissed. DCS did not come to the scene, but later got involved because of the nature of the police report.

[5] On September 14, DCS family case manager ("FCM") Jairo Sanchez assessed the family at L.R.'s home, but Mother declined to speak with him. That same day, because of the alleged domestic violence, Child was removed from Mother and Father's care and placed with L.R., where she was already living. The juvenile court ordered Father to find an alternate place of residence; Father began living with a friend. *See* Appellant's Appendix, Volume II at 60.

[6] On September 17, FCM Sanchez spoke with Mother at the local DCS office and she denied that incidents of domestic violence between her and Father had ever occurred around Child. Mother stated the child named in the police report

was not Child, and she refused to offer any other information regarding the identity of the other child.

[7] On September 18, DCS filed a verified petition alleging Child to be a CHINS, as defined in Indiana Code section 31-34-1-1, that read in relevant part as follows:

> Inability, Refusal or Neglect, I.C. 31-34-1-1: The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and the child needs care, treatment, or rehabilitation that the child is not receiving; and is unlikely to be provided or accepted without the coercive intervention of the Court.

*Id*. at 25. DCS specifically alleged Parents were unable to provide Child with an environment free from substance abuse and domestic violence; Mother has a history with DCS due to her substance abuse issues and has not successfully completed services in an open CHINS case involving her other child; Parents were recently involved in a physical altercation in Child's presence; Father was arrested and incarcerated; and Parents have not taken the necessary actions to address these issues. *See id*. at 25-26. Following an initial hearing, the juvenile court ordered Child's continued placement with L.R. but granted Mother and Father supervised parenting time.

[8] A fact-finding hearing was held on January 8, 2019, following which the juvenile court entered its order finding Child to be a CHINS, concluding:

12. [Child's] physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision. [Mother] and [Father] have a violent relationship and have had altercations while Child was present.[3] [Father] has also threatened additional harm to [Mother] and harm to [Child]. [Child's] physical and mental condition is seriously endangered in the current situation.

13. [Child] needs care, treatment, or rehabilitation that she is not receiving and is unlikely to be provided or accepted without the coercive intervention of the Court. The Court does not find [Mother] and [Father]'s testimony denying domestic violence to be credible [because] [Mother] previously disclosed domestic violence to Officer Singh and each parent was observed to have injuries as a result of the altercation. As neither parent is acknowledging the issue of violence, the coercive intervention of the Court is necessary to compel engagement in treatment so that [Mother] and [Father] are able to identify and address this issue.

*Id*. at 86. On March 5, 2019, the juvenile court entered its dispositional decree containing the following findings:

[I]t is in the best interests of [Child] to be continued removed [sic] from the home environment and remaining in the home would be contrary to the welfare of [Child;] . . .

---

[3] During the fact-finding hearing, DCS presented evidence of an unrelated altercation between Mother and Father that occurred on August 27, 2018. *See* Transcript of Evidence, Volume II at 22-23.

> [R]easonable efforts were made by DCS to prevent or eliminate the need for continued removal of [Child;] . . .

> [R]esponsibility for the placement and care of [Child] is ordered or continues to be ordered to the DCS.

> [Child] should be under the temporary supervision of [DCS] . . . [t]o protect [Child.]

Appealed Order at 2. Based on these findings, the juvenile court awarded wardship of Child to DCS, ordered that Child remain in relative care, and entered the following order with respect to parental participation:

> Participation by [Mother] and [Father] in the plan of care for [Child] is necessary . . . . [F]ailure to participate as required by a Parental Participation Order . . . can lead to the termination of the parent-child relationship[.]

*Id*. at 3. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

A CHINS proceeding is a civil action and thus, requires the State to prove by a preponderance of the evidence that a child is a CHINS as defined by the statute. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Preponderance of the evidence simply means "the greater weight of the evidence." *Kishpaugh v. Odegard*, 17 N.E.3d 363, 373 (Ind. Ct. App. 2014) (internal quotation omitted). On review of a juvenile court's judgment that a child is in need of services, we do not

reweigh the evidence or judge the credibility of the witnesses. *In re S.D.*, 2 N.E.3d 1283, 1286 (Ind. 2014). Instead, we consider only the evidence supporting the juvenile court's decision and any reasonable inferences arising therefrom. *Id.* at 1287. Where, as here, the juvenile court has entered findings of fact and conclusions thereon, our review is two-tiered. *B.T. v. Ind. Dep't of Child Servs.*, 121 N.E.3d 665, 668 (Ind. Ct. App. 2019). First, we decide whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will set aside the juvenile court's findings and conclusions only if they are clearly erroneous and our review of the record leaves us firmly convinced a mistake has been made. *In re A.M.*, 121 N.E.3d 556, 561 (Ind. Ct. App. 2019), *trans. denied*.

# II. CHINS Determination

[10] Mother contends there is insufficient evidence supporting Child's CHINS adjudication. She argues that Child was not seriously endangered by the actions or inactions of Mother and Father, and Child was not in need of care she was not receiving or unlikely to receive without the coercive intervention of the court.

[11] DCS alleged that Child was a CHINS pursuant to Indiana Code section 31-34-1-1. Thus, DCS must prove by a preponderance of the evidence that Child is under age eighteen and:

> (1) the child's physical or mental condition is seriously impaired
> or seriously endangered as a result of the inability, refusal, or
> neglect of the child's parent, guardian, or custodian to supply

the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1 (2005); *In re K.D.*, 962 N.E.2d at 1253. Our supreme court has interpreted the statute to require three basic elements that DCS must prove for a juvenile court to adjudicate a child a CHINS: (1) that the parent's actions or inactions have seriously endangered the child, (2) the child's needs are unmet, and (3) those needs are unlikely to be met without State coercion. *In re S.D.*, 2 N.E.3d at 1287.

[12] In this case, the alleged domestic violence between Parents served as the basis of the CHINS petition.[4] Following the fact-finding hearing, the juvenile court concluded (1) Child's physical or mental condition is seriously impaired or seriously endangered because Mother and Father have had altercations while Child was present and have a violent relationship, and (2) Child needs care she is not receiving and is unlikely to receive without the coercive intervention of

---

[4] Although DCS alleged substance abuse in its CHINS petition, no evidence of substance abuse was presented at the fact-finding hearing, and the juvenile court did not make any findings that Child was a CHINS because of it. Therefore, we only review the juvenile court's findings related to Mother and Father's "violent relationship" and the altercation that occurred in Child's presence.

the court because Parents do not acknowledge the issue of violence in their relationship. *See* Appellant's App., Vol. II at 86.

[13] We acknowledge that the purpose of a CHINS adjudication is to "protect children, not punish parents." *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). A CHINS adjudication focuses on the child's condition and status and a separate analysis as to each parent is not required at the CHINS determination stage. *Id.* at 105-06.

[14] Mother first argues the evidence does not support the juvenile court's findings that Child was present during Parent's altercation. We disagree. Conflicting evidence was presented at trial as to whether Child was present during the altercation between Mother and Father. Officer Singh testified that there were not any children present during his investigation outside the home, but Mother told him that a child was in the apartment during the altercation. *See* Transcript of Evidence, Volume II at 24. Mother later stated in the interview with FCM Sanchez, however, that the child in the apartment was not Child. DCS did not question Officer Singh, at trial, on whether Child was the actual child that was present during the altercation. DCS also presented additional witnesses who could not confirm that Child was present during the altercation. We acknowledge that conflicting evidence was presented as to whether Child was present during the altercation. However, our standard of review requires that we consider *only* the evidence supporting the juvenile court's decision and any reasonable inferences arising therefrom. *See In re S.D.*, 2 N.E.3d at 1287. Therefore, in light of the evidence and our standard of review, we find that

sufficient evidence was presented to support the juvenile court's finding that Child was present during Parent's altercation.

[15] Mother next argues that the evidence does not support the juvenile court's finding that Mother and Father had a violent relationship. Again, we disagree. The record reveals that when Officer Singh arrived at the apartment where the altercation occurred, Mother told him that she had been physically assaulted by Father, and Father threw her to the ground. She had bruise marks and cuts on her hands. She also told Officer Singh that she had previous injuries from prior altercations with Father and that Father had threatened to "hurt her daughter[.]" *Id*. at 23. Father told Officer Singh that he also had sustained cuts during the altercation from his attempts to defend himself. This evidence supports the juvenile court's finding that Mother and Father had a violent relationship.

[16] Our analysis, however, does not end here. Although the evidence most favorable to the juvenile court's determination supports the finding that Child was present during the September 12 altercation, and that Parents were involved in at least one act of domestic violence, we still must determine whether the juvenile court's conclusion that this altercation seriously endangered Child is supported by the evidence.

[17] We recognize that "a single incident of domestic violence in a child's presence may support a CHINS finding[.]" *K.A.H. v. Ind. Dep't of Child Servs.*, 119 N.E.3d 1115, 1121 (Ind. Ct. App. 2019) (emphasis added). In *K.A.H.*, a mother and her

boyfriend had an abusive relationship and mother's two children often witnessed mother's boyfriend "screaming, belittling, and battering" her. *Id.* at 1116. At various times, the boyfriend babysat the children. After one such time, one of the children, M.G., complained to his mother that his head hurt. The following day, the boyfriend babysat M.G. again while the other child was at school. At some point, M.G. was nonresponsive and died later that day. DCS filed a petition alleging that the other child, K.H., was a CHINS. The juvenile court concluded that K.H. was seriously impaired or seriously endangered from the mother's inability to provide K.H. with appropriate shelter or supervision and thus, was a CHINS. Mother appealed and a panel of this court affirmed the CHINS adjudication, concluding that the physical trauma that the mother and M.G. suffered, and the mother's inability to recognize the effects of domestic violence on her parenting and children's well-being warranted the coercive intervention of the CHINS court. *Id.* at 1124.

[18]    The instant case, however, can be distinguished from *K.A.H.* Here, the evidence DCS presented was not nearly as egregious as the evidence presented in *K.A.H.* For example, DCS offered no evidence that Child was afraid to be around Parents or that Child suffered any trauma or abuse from domestic violence. No evidence was presented that Child, three years old at the time the September 12 incident occurred, comprehended the violence between Mother and Father. *Cf. K.B. v. Indiana Dept. of Child Services*, 24 N.E.3d 997 (Ind. Ct. App. 2015) (noting that children, twelve and thirteen, were old enough to comprehend the violence). Unlike in *K.A.H.*, where the children witnessed the domestic

violence, the facts presented here do not indicate Child's exact location to witness Parents' altercation and therefore, we cannot make an inference that Child suffered as a result of the domestic violence. Although DCS presented evidence of a prior unrelated altercation between Parents on August 27, in addition to evidence of the September 12 incident, DCS failed to establish a sufficient nexus between the altercations and Child's condition. It did not offer evidence that the child was impacted, let alone that she suffered or comprehended the violence between Parents. DCS asserts Parents have a violent relationship based solely on these two incidents. While we cannot stress enough that incidents of domestic violence are not to be taken lightly, we reiterate that a "CHINS adjudication focuses on the condition of the child[,]" not the parents. *In re N.E.*, 919 N.E.2d at 105. The evidence presented here focused solely on the physical altercation between Mother and Father rather than the condition of Child. As such, the evidence presented, without more, does not support the juvenile court's determination that Child's physical or mental condition was seriously endangered for purposes of Indiana Code section 31-34-1-1(1).

[19] Next, Mother argues there is insufficient evidence to support the juvenile court's conclusion that Child was in need of care she was not receiving or unlikely to receive without the coercive intervention of the court. We agree.

[20] DCS largely focuses on the altercation that occurred between Mother and Father on September 12 rather than any of Parents' accomplishments or improvements made since the incident. The coercive intervention element

"guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the *ability* to provide for their children,' not merely where they 'encounter *difficulty* in meeting a child's needs.'" *In re S.D.*, 2 N.E.3d at 1287. When determining CHINS status under this element, courts should consider the family's condition *not just* when the case was filed, *but also* when it is heard. *Matter of A.R.*, 110 N.E.3d 387, 401 (Ind. Ct. App. 2018). "Doing so avoids punishing parents for past mistakes when they have already corrected them." *Id.*

[21] Prior to the incident, Child was living with Father at L.R.'s home. FCM Sanchez testified that when he visited L.R.'s home, the home was appropriate for Child. *See* Tr., Vol. II at 40. Father provided for Child's medical and educational needs without assistance from DCS or the State and properly supervised Child when she was in his care.

[22] At the time of the fact-finding hearing, Parents had taken substantial steps to remedy the disagreements between them. Father voluntarily attended domestic violence sessions through Families First because he wanted to "take the classes and then kind of better himself [after the incident.]" *Id.* at 44. He began these sessions on October 25, 2018, and at the time of the fact-finding hearing, he had completed seven of the recommended twenty-six weeks of sessions. Father's drug screens also demonstrate that he maintained sobriety throughout the pendency of this case. Most notably, on March 5, 2019, Father asked the juvenile court that Child be placed in his care, demonstrating his willingness and ability to care for Child. *See id.* at 86.

[23] As for Mother, she began supervised visits on November 13, 2018 at Hoosier Families. These visits took place once a week at Mother's home and increased to twice a week in December 2018. Sahsell Hunnighan, a visitation supervisor at Hoosier Families, testified that Mother provides Child with meals at every visit as well as toys to engage in activities. *See id.* at 73. She emphasized that Child and Mother "have a really good relationship. . . . [Child] shows her respect[,] so I think it goes pretty well and they have a lot of fun." *Id.* at 74. She further testified that Mother uses "[a]ppropriate parenting skills, no profanity [or] anything like that." *Id.* In describing Mother's home, Hunnighan testified,

> The home is fine, it's well kept. I believe she moved in [there] recently [and] it has [a] new look. . . . She has food stacked in the fridge all the time, cupboards are always filled [be]cause I do home audits once a month. . . . [A]ctually she always has hot water, she always has heat, always has you know food stocked up so it's good.

*Id.* at 74-75. She further testified, "I did recommend to move to unsupervised parenting time [be]cause I didn't see any safety concerns." *Id.* at 75. Moreover, Mother tested negative for illegal substances from July 2018 until the day of her last screen in February of 2019. *See* Appellant's App., Vol. II at 100-02. Mother has demonstrated that she, too, is well-equipped to provide Child with the necessary care and supervision for her development. Again, we emphasize that the point of a CHINS inquiry is to "protect children, not [to] punish parents." *In re N.E.*, 919 N.E.2d at 106.

[24] Based on this evidence, we conclude that DCS failed to prove by a preponderance of the evidence that Child needed care or treatment that was unlikely to be provided without the juvenile court's coercive intervention. Therefore, the juvenile court's conclusion to the contrary was clearly erroneous and not supported by the evidence.

[25] Although Parents have a history of making poor decisions and have one substantiated incident of domestic violence, the record reflects that they have made significant efforts to remedy their situation and become more suitable parents. We must note that parents who make positive changes in their lives should be applauded, rather than being subjected to the coercive intervention that results from a CHINS finding. *See In re R.S.*, 987 N.E.2d 155, 159 (Ind. Ct. App. 2013).

[26] In sum, the evidence, even viewed most favorably to the judgment, cannot reasonably support an inference that Parents' actions or inactions seriously endangered Child or that they were likely to need the juvenile court's coercive intervention. Therefore, the State failed to meet its burden by a preponderance of evidence.

# Conclusion

[27] We conclude that the juvenile court's determination that Child was a CHINS was clearly erroneous. We therefore reverse and remand to the juvenile court to vacate the CHINS finding as to Child.

[28]     Reversed and remanded.

Mathias, J., and Pyle, J., concur.