

I N   T H E

# Court of Appeals of Indiana

In re B.W. (Minor Child), Child in Need of Services

A.P. (Mother) and C.W. (Father),

*Appellants-Respondents*

FILED

Jul 03 2025, 9:12 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

July 3, 2025

Court of Appeals Case No.
24A-JC-2557

Appeal from the Clark Circuit Court

The Honorable Lisa G. Reger, Magistrate

Trial Court Cause No.
10C04-2406-JC-000116

---

**Opinion by Judge Felix**
Judge Foley concurs.
Judge Mathias concurs in part and dissents in part, with separate
opinion.

**Felix, Judge.**

## Statement of the Case

A.P. ("Mother") reported ongoing domestic violence committed by C.W. ("Father") to the Indiana Department of Child Services ("DCS"). Specifically, Mother alleged Father slapped her in the face, hit her with a folding chair, cracked her windshield, broke her phone, and brandished a firearm. After making her report to DCS, Mother took B.W. ("Child") and left the home they shared with Father. Despite the seriousness of the allegations, Mother and Child returned home, prompting DCS to file a petition alleging Child was a child in need of services ("CHINS"). The trial court adjudicated Child a CHINS and entered a dispositional order removing Child from the home and requiring Mother and Father to comply with certain requirements. Mother and Father both appealed, and we consolidated their separate appeals. Mother and Father raise the following issues for our review:

1. Whether the CHINS disposition was clearly erroneous; and
2. Whether the trial court abused its discretion by imposing its dispositional order.

We affirm.

## Facts and Procedural History

On December 27, 2019, Child was born to Mother and Father. On June 7, 2024, Mother and Child went to the Clark County DCS office to request help because "[Mother] was being abused emotionally, financially and physically."

Tr. Vol. II at 23. Mother spoke with Family Case Manager ("FCM") Peyton Medley and alleged that Father "slapped her in the face in front of the Child . . . cracked the windshield of [Mother's] car with [Child] in the car . . . broke [Mother's] phone . . . [and] hit [Mother] in the head with a folding chair . . . ." *Id.* at 24. Mother also claimed that, on June 6, Father brandished a firearm during an argument between Mother and Father, and Child saw the firearm. Mother and Child also reported concerns with Father's excessive alcohol usage, and, at the time of the factfinding hearing, Father had a pending criminal charge for allegedly operating a vehicle while intoxicated while Child was a passenger in the car. During the June 7 meeting, Child also "disclosed Domestic Violence in the home," Joint Appellant's App. Vol. II at 39, so Mother and FCM Medley discussed the need to keep Child safe, and Mother made arrangements to stay with a family member.

[4] On or about June 16, Mother and Child returned to live with Father. After learning of their return, DCS obtained emergency custody of Child. When FCM Medley removed Child from the home, Mother "said thank you and stated that the[y] needed help, her and [Father]." Tr. Vol. II at 76.

[5] During the initial hearing, Mother agreed that Child should remain outside of her care. Mother and Father were offered services but declined to participate. During the CHINS factfinding hearing, Mother testified that her June 7 statements to DCS were untrue and due to mental health issues and jealousy. Mother denied Child witnessed any acts of domestic violence, and denied any

domestic violence occurred in that last 12 months.  However, Father's testimony paints a different picture:

> Q:  You and [Mother] argue sometimes?
>
> A:  Everybody does.
>
> Q:  During the times that you argue is [Child] present?
>
> A:  No.
>
> Q:  The child was never present during any . . .
>
> A:  Not majority of the time! !  [sic]
>
> Q:  Alright. Talk to me a little bit about that. When she is present, what does that look like?
>
> A:  When she's present, we don't, I mean it's not like the rest of arguing where we're throwing stuff or hitting each other or whatever . . . .

Tr. Vol. II at 67.  This is not the first time Mother has made very specific claims of vicious acts of domestic violence only to later recant her statements. For instance, in 2020, Mother alleged that Father grabbed her by her hair, threw her to the ground, and punched her in the face.  Father was charged but not tried for the incident after Mother recanted the allegation to the prosecutor's office to have the charges and no contact order dropped.  During the June 7 meeting with FCM Medley, Mother discussed the 2020 incident and, in regards to her

recanting, admitted that she "lied to have the no contact order dropped." *Id*. at 26.

[6] On September 6, the trial court determined Child was a CHINS. The trial court's decision included 28 findings concerning Father's criminal history, domestic violence between the Mother and Father (collectively, "Parents"), and the Parents' drug and alcohol use. Significantly, the trial court found that "Mother's return to the home places [Child] at unacceptable risk of witnessing further domestic violence." Joint Appellant's App. Vol. II at 68. This appeal followed.[1]

## Discussion and Decision

### 1. The Trial Court Did Not Clearly Err by Adjudicating Child a CHINS under Indiana Code Section 31-34-1-1

[7] Mother and Father challenge the CHINS determination under Indiana Code section 31-34-1-1. That section provides that in order to adjudicate a child a CHINS thereunder, DCS must prove by a preponderance of the evidence that

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:

---

[1] Mother and Father filed separate appeals. Father filed a Motion to Consolidate these appeals, and the Motion was granted.

(A)  when the parent, guardian, or custodian is financially able to do so; or

(B)  due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and

(2)  the child needs care, treatment, or rehabilitation that:

(A)  the child is not receiving; and

(B)  is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1.  Although there is "a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010).

[8]  We will reverse a CHINS determination only if the trial court's decision was clearly erroneous. *In re R.L.*, 144 N.E.3d 686, 689 (Ind. 2020) (citing *In re D.J.*, 68 N.E.3d 574, 578 (Ind. 2017)).  "A decision is clearly erroneous if the record facts do not support the findings or if [the trial court] applies the wrong legal standard to properly found facts." *Id.* (quoting *D.J.*, 68 N.E.3d at 578).  "[W]e neither reweigh the evidence nor judge witness credibility." *Id.* (citing *D.J.*, 68 N.E.3d at 577–78).  When, as here, a trial court enters findings and conclusions sua sponte, we review any issue not covered by the findings "under the general

judgment standard," which means we will affirm "on any legal theory supported by the evidence." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016) (citing *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014)). Furthermore, we accept as true any findings that Mother and Father do not challenge on appeal. *See R.M. v. Ind. Dep't of Child Servs.*, 203 N.E.3d 559, 564 (Ind. Ct. App. 2023) (citing *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992)), *trans. not sought*.

[9] On appeal, Mother argues that DCS failed to show that Mother seriously endangered Child and that Child's needs would not be met without intervention. In making her arguments, Mother does not specifically challenge any of the trial court's findings, so we take them all as true, *see R.M.*, 203 N.E.3d at 564 (citing *Madlem*, 592 N.E.2d at 687). Father did challenge specific facts, but all of his arguments are clearly invitations for us to reweigh the evidence and reassess witness credibility, which we cannot do. *See Ma.H.*, 134 N.E.3d 41, 45 (Ind. 2019) (citing *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014)). For instance, Father challenges findings related to Mother's June 7 report to DCS of domestic violence,[2] claiming the trial court should have believed her

---

[2] In particular, Father challenges the following findings regarding domestic violence:

4) Mother admitted to DCS on June 7, 2024, that she was the victim of domestic violence by Father.

5) Mother stated that the relationship with Father was physically, mentally, and financially abusive.

6) Mother indicated that Father has an alcohol problem, and that when he is impaired, he is violent.

7) Mother indicated that she has been struck by Father in front of the child on more than one occasion.

sworn testimony denying the allegations rather than the initial report. Father Appellant's Br. at 17–19. However, the trial court was free to discount Mother's testimony recanting her most recent allegations of ongoing domestic violence given her admission to FCM Medley that she lied when she recanted the allegations she made regarding the 2020 domestic violence incident and Father's testimony that, when Child is not present, Mother and Father's arguments include "throwing stuff or hitting each other or whatever," Tr. Vol. II at 67.

[10] We reiterate that a CHINS adjudication is not about parental fault; it is simply a determination that the child needs services. *N.E.*, 919 N.E.2d at 105. Here, the trial court found there is evidence of domestic violence in the home, and that Child has witnessed the violence. In *K.B. v. Indiana Department of Child Services*, a panel of this court held that "a child's exposure to domestic violence can support a CHINS finding." 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015) (citing *N.E.*, 919 N.E.2d at 106). The trial court need not "wait until a child is physically or emotionally harmed to intervene; rather, a child may be determined to be a CHINS if his or her physical or mental condition is endangered." *Id.* (citing *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011)).

---

8) Mother admitted that Father brandished a firearm at Mother during the most recent domestic violence incident.

Joint Appellant's App. Vol. II at 67–68.

Considering only the evidence and reasonable inferences that support the juvenile court's decision, we cannot say that the juvenile court clearly erred in concluding that (1) the abuse Mother described on June 7 did occur, (2) Mother's denials regarding the violence on June 7 were not credible given her recantation of the 2020 incident and admission that that recantation was untruthful, and (3) Child's return to the home creates an "unacceptable risk of witnessing further domestic violence[.]" Joint Appellant's App. Vol. II at 68.

## 2. The Trial Court Did Not Abuse Its Discretion by Entering the Dispositional Order

Mother next challenges the dispositional order. After a child is adjudicated a CHINS, the trial court holds a dispositional hearing to consider "placement of the child . . . [and t]he necessity, nature, and extent of the participation by a parent . . . in the program of care, treatment, or rehabilitation for the child." I. C. § 31-34-19-1. Mother argues the juvenile court erred by (a) imposing certain requirements and (b) placing Child outside the home. We address each argument in turn.

### a. Dispositional Requirements

A trial court has "broad discretion in determining what programs and services in which a parent is required to participate" following a CHINS determination, but "the requirements must relate to some behavior or circumstances that was [sic] revealed by the evidence." *In re K.D.*, 962 N.E.2d 1249, 1258 (Ind. 2012) (citing *A.C. v. Marion Cnty. Dep't of Child Servs.*, 905 N.E.2d 456, 464 (Ind. Ct. App. 2009)). Thus, we review a trial court's order of services and conditions in

a CHINS case for abuse of discretion. *See In re R.G.*, 130 N.E.3d 1171, 1180–81 (Ind. Ct. App. 2019). An abuse of discretion occurs when the court's action is "against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual inferences drawn therefrom." *A.C. v. State*, 144 N.E.3d 810, 813 (Ind. Ct. App. 2020) (quoting *C.C. v. State*, 831 N.E.2d 215, 217 (Ind. Ct. App. 2005)).

[14] As an initial matter, we note that DCS argues Mother waived her appellate challenge to the dispositional requirements by failing to object to them in the trial court. We disagree. In support of its waiver argument, DCS cites to *In re N.G.*, in which our Supreme Court held that a parent waived her due process claim after she failed to object in the trial court and her counsel told the trial court the contested matter was resolved. 51 N.E.3d 1167 (Ind. 2016). Here, Mother made no such concession to the trial court and tendered her own proposed dispositional order which was not adopted by the trial court. DCS also cites to *Plank v. Community Hospitals of Indiana, Inc.* in support of waiver, but that case involved a constitutional challenge to a statute, not dispositional requirements. 981 N.E.2d 49 (Ind. 2013). The statute at issue in *Plank* was known to the appellant at the time of the trial, *id*. at 53–54, unlike the dispositional requirements entered here.

[15] Without any discussion of the specific requirements included in the proposed order submitted by DCS, the trial court made an in-court ruling adopting DCS's proposed order as submitted and gave Mother no opportunity to object. We liken the appeal of the dispositional requirements to an appeal of probation

conditions or a criminal sentence, "which we may review 'without insisting that the claim first be presented to the trial judge.'" *Piercefield v. State*, 877 N.E.2d 1213, 1218 (Ind. Ct App. 2007) (quoting *Kincaid v. State*, 837 N.E.2d 1008, 1010 (Ind. 2005). Accordingly, we review Mother's challenges to the dispositional requirements.

[16] Mother argues that the trial court "imposed several requirements on her unrelated to the behavior or circumstances revealed by the evidence." Mother Appellant's Br. at 10. For instance, Mother claims the requirement to "[n]otify the [FCM] of any arrest or criminal charges for any household member within five (5) calendar days of said change" was not sufficiently related "to the behavior or circumstances revealed by the evidence" because it is not limited to Father's existing criminal history. *Id.* at 10 (quoting *K.D.*, 962 N.E.2d at 1258). This argument lacks any merit. The State has an interest in ensuring the Child is sheltered from criminal behavior, and we cannot say the trial court abused its discretion in recognizing this.

[17] Next, Mother claims the requirement to "[a]llow the [FCM] or other service providers to make announced or unannounced visits to the home of the child, permitting entrance into the home to ensure the safety of the child and to make the child available to the FCM and/or GAL/CASA" cannot stand because the child was removed. Mother Appellant's Br. at 11. Child was removed from the home because there was evidence that Child was present for multiple domestic violence episodes. Given the goal of this case is reunification, we cannot agree that this requirement represents an abuse of discretion or that the trial court

should have waited until after Child returned to the home. Before making the determination to permit Child's return to the home, it will be incumbent on DCS to ensure that no violence is occurring or has recently occurred. One of the best methods of making that determination is to inspect the home for signs or evidence of continuing violence.

[18] Mother also challenges the requirement to provide a safe, clean home for Child because there was no evidence that Child lacked food, failed to attend appointments, or that she was not hitting developmental milestones. Mother cites to our decision in *In re V.H.*, 967 N.E.2d 1066 (Ind. Ct. App. 2012), to claim that this language is boilerplate and should not be allowed to stand. In *V.H.*, the mother was ordered to institute a protection plan to protect her daughter from abuse, but there was no evidence that V.H. had been abused. *Id.* at 1074. In the present case, there is evidence Child witnessed domestic violence in the home, so the requirement to maintain a safe home is related to the evidence and not an abuse of discretion.

[19] Next, Mother challenges the prohibition to consume alcohol because there is no evidence she abused alcohol. Mother claims this "boilerplate language" cannot stand, and she relies on *In re A.C.*, 905 N.E.2d 456 (Ind. Ct. App. 2009), for that proposition. However, the present case is distinguishable. In *A.C.*, the parent had no drug history but was ordered to participate in drug treatment. *Id.* at 464. That is, the parent in *A.C.* was required to affirmatively do something unrelated to the CHINS adjudication that could have delayed reunification. *Id.* Here, Mother is simply ordered not to consume alcohol, which does not present a

delay in reunification efforts and is related to the factual finding that Mother has a "history of substance abuse, specifically for cocaine and alcohol." Joint Appellants App. Vol. II at 68. Therefore, ordering Mother to abstain is not an abuse of discretion.

[20] Additionally, Mother claims the requirement to ensure Child is fed, clothed, supervised, and attending school is unsupported by the evidence because there was no evidence that Child lacked food, failed to attend appointments, or that she was not hitting developmental milestones. We agree the record supports the contention that Child is fed, attends appointments, and is hitting developmental milestones. The trial court's inclusion of this requirement was unrelated to "some behavior or circumstances that was [sic] revealed by the evidence," *K.D.*, 962 N.E.2d at 1258, and was therefore an abuse of discretion.

[21] Lastly, Mother challenges the following requirement (hereinafter referred to as the "Enrollment Requirement"):

> If a program or programs is/are recommended by the [FCM] or other service provider, enroll in that program [within] a reasonable time, not to exceed thirty (30) days and participate in the program as scheduled by that program without delay or missed appointments. If required to obtain an assessment, arrange to complete that assessment within thirty (30) days.

Joint Appellant's App. Vol. II at 13. In particular, Mother claims the Enrollment Requirement violates her procedural due process rights. Procedural due process requires "the opportunity to be heard at a meaningful

time and in a meaningful manner." *K.D.*, 962 N.E.2d at 1257 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[22]   Mother argues the Enrollment Requirement cannot stand because the trial court impermissibly delegated its "ability to *create orders* that [Mother] must follow or suffer potential ramifications." *Id*. at 13 (emphasis in original). We disagree with Mother's characterization of the Enrollment Requirement. The dispositional order clearly requires Mother to complete a parenting assessment, substance abuse assessment, and domestic violence assessment as well as complete all recommendations associated with those assessments. Mother had notice of those requirements as they were included in the predispositional report. The Enrollment Requirement allows DCS to recommend specific programs to attend and complete based upon the recommendations of the assessments. Moreover, the trial court remains involved in the CHINS case, conducting periodic reviews, *see, e.g.*, I. C. § 31-34-21-2; thus, Mother can easily petition the trial court if she disagrees with any recommendation. For the foregoing reasons, the trial court did not abuse its discretion by issuing the Enrollment Requirement.

### b. Child Removal

[23]   Mother argues that the out-of-home placement violates her "fundamental right to raise" Child. Mother Appellant's Br. at 16. This right, however, is tempered with the best interest of Child. *See K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 646 (Ind. 2015) (citing *Bester v. Lake Cnty. Office of Family & Children,* 839 N.E.2d 143, 147 (Ind. 2005) ("[P]arental rights are not absolute,

and the best interests of the child must prevail."). "If consistent with the safety of the community and *the best interest of the child*, the juvenile court shall enter a dispositional decree that . . . is least disruptive of family life . . . ." I.C. § 31-34-19-6(a)(1)(A) (emphasis added).

[24] Although Mother claims the least restrictive option would have been leaving Child in the home and requiring Parents to participate in services, Mother and Father's downplaying of the violence and failure to participate in suggested services until after the CHINS adjudication illustrates the need for more coercive measures. Child was removed from the home because there was evidence that Child was present for multiple domestic violence episodes. The specific instances were particularly violent and involved Father slapping Mother in the face, cracking Mother's windshield, breaking Mother's phone, and striking Mother in the head with a folding chair. There are also concerns of alcohol and firearm use. After the emergency custody order was issued, Mother *thanked* DCS for taking Child and did not object to Child's out of home placement during the initial hearing. Although Mother has had second thoughts since making her report, we are not obliged to do the same. The trial court determined that it was in Child's best interests to be removed from the home while Mother and Father make efforts toward reunification, and we agree. The trial court did not abuse its discretion by removing Child from the home.

## Conclusion

In sum, the trial court did not clearly err by adjudicating Child a CHINS and did not abuse its discretion by removing Child from the home. We affirm the trial court on these issues. However, the trial court abused its discretion by ordering Mother to ensure Child is fed, clothed, supervised, and attending school, so we reverse and remand with instructions for the trial court to strike that requirement from its dispositional order as to Mother. We affirm all other conditions imposed by the trial court in its dispositional order.

Affirmed in part, reversed in part, and remanded with instructions.

Foley, J., concurs.
Mathias, J., concurs in part and dissents in part, with separate opinion.

ATTORNEY FOR APPELLANT – MOTHER

Christopher Sturgeon
Jeffersonville, Indiana

ATTORNEY FOR APPELLANT – FATHER

Andrew R. Rutz
Lorch, Naville and Ward, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

**Mathias, Judge, concurring in part and dissenting in part.**

I concur with the majority in all but its decision to remove that part of the dispositional order that requires Mother to ensure Child is fed, clothed, supervised, and attending school. Mother objects to these components of the order, citing a case which ordered programming for alleged criminal conduct that was neither admitted nor proved. That case is easily distinguishable from the case before us.

The facts make clear that the circumstances in this household that resulted in Child's removal were chaotic and volatile, including domestic violence in the presence of Child.

It is always hoped that CHINS removals are temporary. These components of the dispositional order seek to ensure stability in the home to which Child may be returned and are, therefore both appropriate and necessary.

I would therefore affirm the trial court's judgment in all respects.