

IN THE

# Court of Appeals of Indiana

In the Matter of A.L. (Minor Child),

*A Child in Need of Services*

and

R.L. (Mother)

*Appellant-Respondent*



FILED

Apr 27 2026, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

and

Kids' Voice of Indiana

*Appellee-Guardian Ad Litem*

April 27, 2026

Court of Appeals Case No.
25A-JC-2535

Appeal from the Marion Superior Court

The Honorable Rosanne T. Ang, Magistrate

Trial Court Cause No.
49D09-2407-JC-7153

**Scheele, Judge.**

## Case Summary

[1] R.L. (Mother) appeals the trial court's determination that her son, A.L. (Child), is a Child in Need of Services (CHINS). Mother raises several issues on appeal, one of which we find dispositive: whether the evidence is insufficient to support the adjudication. Concluding the evidence is insufficient, we reverse.[1]

## Facts and Procedural History

[2] Mother and K.P. (Father) (collectively, Parents) are the biological parents of Child, born in October 2023.[2] Parents have three children older than Child, all of whom were removed from Parents' care in October 2023 and found to be CHINS in January 2024.

[3] In early July 2024, Father and Child were in a car accident. Thereafter, Parents and the Indiana Department of Child Services (DCS) agreed to a safety plan in which Father would not drive with Child. Later that month, Mother caught

---

[1] Given our holding, we do not address Mother's arguments that certain findings made by the trial court are clearly erroneous or that there is insufficient evidence to support its conclusion that Child's needs are unlikely to be met without State coercion.

[2] Father does not participate in this appeal.

Father with "spice" and ended her relationship with him. Tr. Vol. II p. 64. A few days later, on July 20, Mother went to work and left nine-month-old Child with Father. Before leaving, Mother instructed Father not to leave the residence with Child due to the safety plan. Nonetheless, while Mother was gone, Father drove with Child and was in a car accident. Child was in an improperly installed car seat but was not seriously injured.[3]

[4] On July 21, DCS removed Child from Parents' care and placed him in foster care, where he has since remained. The next day, DCS filed a petition alleging Child is a CHINS, citing Father's drug use and Mother's "poor parenting decisions."[4] Appellant's App. Vol. II p. 23.

[5] In October, Mother began services with homebased case manager Abbi Seeman to address "parenting skills, awareness of mental health needs for both herself and [Child], and home conditions and safety." Tr. Vol. II p. 70. Mother was initially inconsistent in attending this service but by December became more consistent. She consistently attended visitation with Child. No safety concerns were observed during visits, and Mother and Child had a good bond and were comfortable together.

[6] At some point prior to November, Mother began a relationship with Timothy Wilson (Boyfriend) and later became pregnant with his child. Boyfriend is a sex

---

[3] Father was arrested as a result of this incident, but no criminal charges were filed.

[4] DCS filed an amended petition on August 30, 2024, to correct Child's last name.

offender who was convicted in 2010 of Class B felony incest, Class D felony dissemination of matter or conducting performance harmful to minors, and Class A misdemeanor contributing to the delinquency of a minor. Mother, Boyfriend, and Seeman "created a safety plan to address the concerns of [Boyfriend's] history[.]" *Id.* at 71. The plan "prevent[s] contact" between Boyfriend and Child and his older siblings.[5] *Id.* at 72. As part of the plan, Mother and Boyfriend arranged to transport their expectant child between their separate residences. Mother also identified "trusted family members" who could provide childcare during times she would be with Boyfriend and "purchased security cameras to ensure that everyone could be accountable" to the plan. *Id.*

[7] A factfinding hearing was held in March and May 2025. Family Case Manager (FCM) Tatiana Sia testified Mother's visits go "well" and there are no concerns regarding her interactions with Child. *Id.* at 55. She also stated Mother "has improved in her parenting skill." *Id.* at 48. The only concern FCM Sia identified regarding Mother was her relationship with Boyfriend. Seeman testified Mother was "incredibly compliant" with the program to improve her parenting skills and that she had no "safety concerns about [Mother's] willingness to meet

---

[5] Boyfriend did attend one visit between Mother and Child "around the time of [Child's] first birthday," which would have been October 2024. Tr. Vol. II p. 35. This was seemingly before the safety plan was implemented. *See id.* at 71 (Seeman testifying Mother has complied with safety plan). It is also unclear from the record whether Mother knew of Boyfriend's sex offender status at the time of this visit. Family Case Manager Tatiana Sia testified she became aware of Boyfriend's criminal history in November 2024 and that Mother also became aware around then. *See id.* at 51.

needs of [Child.]" *Id.* at 71. Seeman also testified regarding the "safety plan to address the concerns of [Boyfriend's] history" and stated that Mother has complied with that safety plan. *Id.* at 70-71.

[8] Mother testified that she was unaware of Boyfriend's criminal history when she started the relationship. However, she admitted she was still in a relationship with Boyfriend and that she was pregnant with his child. She explained the details of the safety plan and stated that she and Boyfriend were both present when the plan was created and intended to follow it. Mother also testified it was her intention to live with Boyfriend "[e]ventually, but nowhere soon" and stated it "could be a year, it could be two" before she did so. *Id.* at 17, 21. She later clarified,

> I won't let [Boyfriend] around the children until he has no conviction because he's currently going through a court process because new evidence has been identified in his case. So, until something is off of his record stating different than what he does have on his record, he won't be allowed around the children.

> ***

> He won't be allowed around [Child and his older siblings] at all until he has nothing on his record.

> ***

> If his record doesn't get cleared, then I plan on still having my house with my children, and he stays in his residence and in the safety plan[] we have put together how we can avoid him being around the children at all costs.

*Id.* at 80-81.

[9] On August 11, the trial court adjudicated Child a CHINS pursuant to Indiana Code section 31-34-1-1. In support of its determination, the court found, among other things,

> [Mother's] direct interactions with [Child] are appropriate. However, [Mother] has demonstrated an inability to identify risk factors to [Child's] environment. Despite being aware of [Father's] recent drug use and recent car accident, [Mother] allowed him [to] care for [] their one-year-old child alone while she was at work. This lapse of judgment contributed to [Child] being in a car accident. Despite being aware of [Boyfriend's] conviction for incest, [Mother] continues her relationship with him and anticipates living together in the future. [Child] is endangered by [Mother's] failure to provide and maintain a safe living environment for him

Appellant's App. Vol. II pp. 143-44. Mother now appeals.

## Discussion and Decision

[10] Mother challenges the CHINS adjudication, alleging the evidence is insufficient to support the court's conclusion that her actions or inactions seriously endangered Child. In reviewing a trial court's CHINS determination, "we do not reweigh evidence or judge witness credibility" but consider only the evidence supporting the trial court's judgment and the reasonable inferences therefrom. *In re D.J.*, 68 N.E.3d 574, 577-78 (Ind. 2017). Where, as here, the court entered findings of fact and conclusions of law, we consider "first, whether the evidence supports the findings and, second, whether the findings

support the judgment." *Id.* at 578 (internal quotations omitted). We reverse only if the CHINS determination was clearly erroneous, which occurs if "the record facts do not support the findings" or the wrong legal standard is applied. *Id.*

[11] The trial court found Child to be a CHINS under Indiana Code section 31-34-1-1, which provides a child is a CHINS if that child is under eighteen and:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[12] DCS has the burden of proving by a preponderance of the evidence that the child is a CHINS. Ind. Code § 31-34-12-3 (1997). In sum, a CHINS adjudication "requires three basic elements: that the parent's actions or

inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014), *reh'g denied*.

[13] Mother argues the evidence is insufficient to support the trial court's conclusion that her actions endangered Child. The trial court found Mother's "direct interactions with [Child] are appropriate" but determined Mother endangered Child due to her "inability to identify risk factors to [Child's] environment." Appellant's App. Vol. II p. 143. Specifically, the trial court cited (1) that in July 2024 Mother allowed Father to care for Child despite Father's "recent drug use and recent car accident" and (2) Mother's continued relationship with Boyfriend. *Id.*

[14] "A CHINS finding should consider the family's condition not just when the case was filed, but also when it is heard." *In re S.D.*, 2 N.E.3d at 1290. "Doing so avoids punishing parents for past mistakes when they have already corrected them." *In re D.J.*, 68 N.E.3d at 581. "Thus, in a CHINS case, we give special consideration to a family's current conditions." *Ad.M. v. Ind. Dept. of Child Servs.*, 103 N.E.3d 709, 715 (Ind. Ct. App. 2018).

[15] As an initial matter, we note DCS removed Child from Parents' care after he was in a car accident with Father. DCS claimed Mother exhibited "poor parenting decisions" by leaving Child with Father to go to work, as she had caught Father with spice three days prior. Appellant's App. Vol. II p. 23. We note there is no evidence Mother knew Father used drugs while caring for

Child, or indeed that he was doing so. Although DCS contends Father "drove under the influence with Child[,]" there was no evidence presented that Father was intoxicated on July 20.[6] Appellee's Br. p. 13. And while Father had been in a car accident with Child previously, he thereafter agreed to a safety plan with DCS wherein he would not drive with Child, and Mother explicitly told him not to do so before she left on July 20.

[16] Even assuming Mother's decision to leave Child with Father on July 20, 2024, was a poor parenting decision as DCS claims, there is nothing in the record to show any continuing endangerment to Child. At the time of the car accident, Mother had already ended her relationship with Father, and the two were living separately at the time of the factfinding hearing. Furthermore, Mother thereafter complied with homebased therapy to address her parenting skills and had improved. In short, the record shows merely an isolated incident, questionably related to any acts or omissions by Mother, which Mother has since taken steps to ensure will not be repeated. We cannot say that this single incident, which occurred months before the factfinding hearing, is sufficient to show Child was seriously endangered. *See Ad.M.*, 103 N.E.3d at 715 (a single act of domestic violence between parents is insufficient to show serious endangerment where the mother had since moved away from the father and filed for a protective order).

---

[6] Although Father was arrested after the accident, the allegations did not involve intoxication, and he was never criminally charged. *See* 49D18-2407-MC-020690.

[17] As to Mother's continued relationship with a sex offender, we agree this is troubling and certainly shows a "lapse in parental judgment[.]" Appellant's App. Vol. II p. 144. However, it is well settled that a "CHINS adjudication focuses on the condition of the child." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Here, no evidence was presented as to how Mother's relationship with Boyfriend endangered Child. Mother and Boyfriend agreed to a safety plan in which Boyfriend would not have any contact with Child or his older siblings. As part of the plan, Mother and Boyfriend made arrangements to transport their expectant child between their separate homes without Boyfriend coming into contact with the older children, and Mother established alternative childcare plans for when needed. Mother also purchased security cameras to ensure that everyone would be held accountable to the plan. And although Mother testified she anticipated living with Boyfriend in the future, she explained she would not do so if his conviction remained on his record. Under these circumstances, DCS has not shown any nexus between Child's safety and Mother's relationship with Boyfriend; the mere existence of the relationship is not enough. *See Matter of L.N.*, 118 N.E.3d 43, 48 (Ind. Ct. App. 2019) (DCS failed to demonstrate the child was seriously endangered by the parents' actions or omissions where there was no evidence of "the actual impact, if any," on Child's safety).

[18] DCS argues the evidence suggests Mother will not keep Boyfriend away from Child in the future and asserts that the trial court was not required to credit her testimony that she would do so. But while the CHINS statutes do not require the juvenile court and DCS to wait until a child is physically or emotionally

harmed to intervene, the CHINS finding must be based on facts and reasonable inferences from the facts, not on future concerns. *Id.* at 50. The facts presented at the hearing show Mother has historically cooperated with DCS and agreed to their recommended safety plan regarding Boyfriend. There is no evidence she has failed to comply with that plan, and she agreed to continue following it in the future. DCS's assertions that she will not do so are purely speculative. *See id.* ("[A] cause for concern is not the touchstone of a CHINS determination, and an unspecified concern about what might happen in the future is insufficient in itself to carry the State's burden of proof."); *see also In re K.D.*, 962 N.E.2d 1249, 1256 (Ind. 2012) ("Speculation is not enough for a CHINS finding.").

[19] DCS has not shown an ongoing safety concern; in fact, aside from Mother's relationship with Boyfriend, FCM Sia did not identify any safety concerns and instead testified Mother had improved her parenting skills and did well during visits with Child. Seeman similarly testified she had no safety concerns. Ultimately, it was DCS's burden to prove that Mother's actions or inactions seriously endangered Child, and DCS failed to meet this burden.[7] We therefore

---

[7] DCS additionally argues "Child's developmental delays at the time of his removal also showed that Mother could not meet his needs" and thus "his physical and mental wellbeing was seriously impaired or endangered[.]" Appellee's Br. p. 15. Child's foster mother testified that at the time of nine-month-old Child's removal, he was "behind in his milestones." Tr. Vol. II p. 34. However, there was no evidence this was due to any actions or inactions by Mother, nor did the trial court cite this as a reason Child was endangered.

hold the trial court erred when it found Child to be a CHINS, and we reverse the trial court's judgment.

[20] Reversed.

Bailey, J., and Vaidik, J., concur.

ATTORNEY FOR APPELLANT

Don R. Hostetler
Hostetler Law LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Abigail R. Recker
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE – GUARDIAN AD LITEM

Katherine Grace Meger Kelsey
Indianapolis, Indiana